UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMRAN KHAN, et al.,

                Plaintiffs,

-against-

BOARD OF DIRECTORS OF PENTEGRA
DEFINED CONTRIBUTION PLAN, et al.,

                Defendants.

**MEMORANDUM**
**OPINION AND ORDER**

20-CV-07561 (PMH)

PHILIP M. HALPERN, United States District Judge:

    Imran Khan, Joan Bullock, and Pamela Joy Wood ("Plaintiffs")[1] bring this putative class action against the Board of Directors of Pentegra Defined Contribution Plan (the "Board of Directors"), Pentegra Services, Inc. ("PSI"), John E. Pinto ("Pinto"), Sandra L. McGoldrick, Lisa A. Schlehuber, Michael N. Lussier, William E. Hawkins, Jr., Brad Elliott, George W. Hermann, and John Does 1-20 (collectively, "Defendants") for breaches of fiduciary duties and prohibited transactions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* (*See* Doc. 92, "AC").

    Plaintiffs commenced this action on September 15, 2020. (Doc. 1). On December 11, 2020, the Court consolidated into this action a case filed on October 13, 2020 by Richard Greenberg, Gregory S. Digsby, Lindsey Clark, and Chrystal Lewis. (Doc. 72). Plaintiffs then, on December 28, 2020, filed a consolidated class action complaint. (Doc. 74). The Court subsequently appointed Schlichter Bogard & Denton, LLP as interim class counsel (Doc. 84) and granted Plaintiffs leave

---

[1] Plaintiffs filed an on-consent motion to withdraw Richard Greenberg, Gregory S. Digsby, Lindsey Clark, and Chrystal Lewis as named plaintiffs in the action, without prejudice to their participation as class members, should a class ultimately be certified in this case. (Doc. 141). Accordingly, those individuals were terminated as named plaintiffs in this consolidated action on January 27, 2022. (Doc. 142).

to amend the consolidated class action complaint (Doc. 91). The amended pleading was filed on March 5, 2021. (*See* AC).

Defendants moved to dismiss the Amended Consolidated Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6), supported by the Declaration of Robert D. Alin with exhibits (Doc. 107) and a memorandum of law (Doc. 106, "Def. Br.").[2] Plaintiffs filed opposition (Doc. 98, "Pl. Opp."; Doc. 99),[3] and the motion was fully briefed on June 4, 2021 with the filing of Defendants' reply memorandum of law (Doc. 103).

For the reasons set forth below, Defendants' motion is GRANTED IN PART.

## BACKGROUND

Plaintiffs are participants in the Pentegra Defined Contribution Plan (the "Plan"), which is a "defined contribution" or "individual account" employee benefit plan. (AC ¶¶ 6, 10-16). The Plan is a multiple employer plan ("MEP"), which has been adopted by approximately 250 banks for their employees. (AC ¶ 7; *see also* 26 U.S.C. § 413(c)). The Plan is among the largest 0.07% of all defined contribution plans in the United States (referred to as a "Mega Plan"), with over 27,000 participants and $2.1 billion in assets. (AC ¶ 9).

Defendants are alleged to be the Plan's fiduciaries. (*Id*. ¶¶ 17-47). The Board of Directors is the Plan's sponsor under 29 U.S.C. § 1102(a)(1) and its named fiduciary with authority to control

---

[2] Defendants first filed their motion to dismiss on April 1, 2021, two months before the court-ordered deadline to file. (Doc. 93). Defendants elected to re-file the motion on the date the filing was due, June 4, 2021 (Doc. 102), but the Clerk of Court noted on the docket a filing error, terminating that motion. On June 8, 2021, a notice was sent to counsel to re-file the motion papers. Counsel re-filed the moving papers on June 8, 2021. For purposes of this decision, the Court references the documents filed on June 8, 2021, because although they are substantively identical to the other two filings, the June 8, 2021 motion papers were the only ones properly filed, each receiving their own document number as required under the SDNY Electronic Case Filing Rules & Instructions.

[3] Plaintiffs, in addition to their opposition, filed a "Notice of Supplemental Authority" which asks the Court to review and consider as a part of Plaintiffs' opposition an amicus curiae brief recommending that the Supreme Court grant certiorari to review a Seventh Circuit case. (Doc. 101). The amicus curiae brief is not persuasive in the Court's decision-making efforts.

2

and manage the Plan's operation. (*Id*. ¶¶ 17-18, 26). The Board of Directors consists of six executives from participating employers—each named as Defendants herein—as well as Pinto, who is also the President and CEO of PSI. (*Id*. ¶¶ 17-25). The Board of Directors delegated, as permitted by the Plan, its day-to-day fiduciary responsibilities to PSI and its agents. (*Id*. ¶ 18). PSI took on an "extremely broad responsibility" for the Plan's fiduciary functions, including serving as Plan administrator and monitoring the "reasonableness of [its] own fees." (*Id*. ¶¶ 27-32). Plaintiffs allege that PSI acted as a "functional" Plan fiduciary in a variety of roles. (*Id*. ¶¶ 27-45).

Plaintiffs allege that Defendants, in retaining PSI, failed to ensure that PSI's compensation was reasonable for its services to the Plan and relative to market rates for what Plaintiffs contend are the same services. (*Id*. ¶¶ 41-42, 77-103). Indeed, Plaintiffs allege that the fees paid by participants have far exceeded the rates of comparable plans. (*Id*. ¶¶ 88-99). Specifically, Plaintiffs identify examples of other defined contribution plans that paid far lower fees during the same period, including corporate 401(k) plans, industry surveys, and a MEP that paid a fraction of the Plan's fees despite being much smaller. (*Id*. ¶¶ 88-92, 95, 98).

Plaintiffs allege that Defendants retained PSI as the Plan's recordkeeper without competition, or even arm's-length negotiation, and caused it to receive over $50 million in Plan assets since 2014, including uncapped, asset-based fees ranging from 28 basis points to 60 basis points, in addition to annual fees of $75 per participant and $1,950 per employer. (*Id*. ¶¶ 41-42, 77-80, 82). PSI's asset-based fees were not fixed and, because the cost of providing recordkeeping and administrative services is based on the number of participant accounts, the fees were not based on the actual cost of providing recordkeeping and administrative services. (*Id*. ¶¶ 79-80). Plaintiffs allege that Defendants did not negotiate a Plan-level cap, which allowed PSI to retain amounts that Plaintiffs contend exceeded a reasonable fee. (*Id*. ¶¶ 80, 84, 86). As Plan assets grew by $200

3

million from 2014 through 2018, PSI's compensation increased each year even though its services did not, and even though fees in the industry generally were declining. (*Id*. ¶¶ 83-86). Defendants "automatically" renewed PSI's contract repeatedly without obtaining competitive bids since retaining PSI in 2007. (*Id*. ¶¶ 36, 96, 102). Plaintiffs allege that the Plan suffered massive losses, including lost investment opportunity, due to excessive recordkeeping and administrative fees compared to market rates. (*Id*. ¶¶ 88-103). By causing the Plan to include investment options with higher fees in order to compensate PSI, Defendants caused Plan participants to lose over $37 million of their retirement savings. (*Id*. ¶ 111).

Based on these facts, Plaintiffs press four claims for relief contending that Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1) with respect to the Plan's recordkeeping, administrative, and investment management fees (*id*. ¶¶ 116-125, 143-148), engaged in prohibited transactions in violation of 29 U.S.C. § 1106 (*id*. ¶¶ 126-142), and that the Board of Directors and its individual members breached the duty to monitor fiduciaries (*id*. ¶¶ 149-154).

## STANDARD OF REVIEW

I. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

II.  <u>Documents Considered on a Rule 12(b)(6) Motion</u>

Defendants submitted to the Court the following documents annexed to the Alin Declaration to support their motion to dismiss: (1) the Plan's Form 5500 Annual Report for the plan year beginning January 1, 2019; (2) the Plan Document, effective as of January 1, 2018; (3) Federal Home Loan Bank of New York Plan Fee Disclosure Statement for PSI services; (4) Services Agreement between the Plan and PSI, effective as of December 1, 2018; (5) By-Laws of the Board of Directors of the Plan, as amended as of January 1, 2010; (6) By-Laws of the Board of Directors of the Plan, as amended as of January 1, 2018; (7) Services Agreement between the Plan and PSI, effective as of 2013; and (8) Plan Form 5500 Annual Report for the plan year beginning January 1, 2018.

Defendants, aware that the Court's consideration of documents in deciding a Rule 12(b)(6) motion is limited, also filed with their moving papers a "Request for Judicial Notice" which sets forth their position as to why the exhibits annexed to the Alin Declaration should be considered on this motion. (Doc. 108). Plaintiffs opposed that filing (Doc. 100), and Defendants subsequently filed a reply brief (Doc. 104). Each of these documents contains substantive legal arguments that belong in the parties' memoranda of law under Local Civil Rule 7.1(a)(2) (explaining that a motion shall include, *inter alia*, "[a] memorandum of law, setting forth the cases and other authorities relied upon in support of the motion"). Indeed, the filing of these documents seems to be a thinly-veiled attempt to circumvent Rule 4.H of this Court's Individual Practices, which limits memoranda of law in support of motions to twenty-five pages, and reply to ten pages. Defendants' moving brief is twenty-five pages and their reply is ten pages (not including tables of contents and authorities, signature blocks, or certificates of service). However, the four pages of substantive legal arguments in support of the Court's consideration of these extraneous documents and the additional ten pages comprising their reply were submitted without leave of the Court and in contravention of the Court's Individual Practices.

Accordingly, the Court disregards Defendants' supplemental brief in support of their request for judicial notice (Doc. 108), Plaintiffs' eleven-page opposition thereto (Doc. 100), and the reply in further support of the application (Doc. 104). *See Clark v. City of New York*, No. 09-CV-02533, 2015 WL 5719612, at *1 (E.D.N.Y. Sept. 29, 2015) (disregarding the pages of a party's brief that exceeded the page limit under Court rules without the Court's prior approval); *Piazza v. Eckerd Corp.*, No. 02-CV-00043, 2003 WL 23350118, at *2 n.9 (W.D.N.Y. Aug. 22, 2003) (same).

The Court notes, in any event, that it "is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). Moreover, "[c]ourts regularly take notice of publicly available documents including regulatory filings." *Cunningham v. Cornell Univ.*, No. 16-CV-06525, 2017 WL 4358769, at *3-4 (S.D.N.Y. Sept. 29, 2017) (considering investment policy statement, Charter, DOL Forms 5500, prospectuses, and plan disclosures for the fact that they contain a statement but not to prove the truth thereof); *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012) ("The Court can properly consider the Plan and the Summary Plan Description on this motion to dismiss because they are essential to the plaintiffs' ERISA claims and incorporated by reference into their complaint."). Accordingly, the Court considers Defendants' exhibits themselves only to the extent necessary and only as permitted by the applicable case law to resolve the instant motion.

## ANALYSIS

I. <u>Defendant PSI</u>

Defendants contend that PSI was not a fiduciary with respect to the Plan and therefore, the claims alleged against it must fail. A "fiduciary" is defined under ERISA as follows:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). While ERISA's definition of fiduciary is "to be broadly construed," *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997), a person may be an ERISA fiduciary with respect to certain matters but not others, for he has that status only "to the extent" that he has or exercises the described authority or responsibility, *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987).

ERISA defines a fiduciary "in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis in original). "The 'threshold question' in an action charging breach of a fiduciary duty under ERISA 'is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, performing a fiduciary function) when taking the action subject to complaint.'" *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 757 (S.D.N.Y. 2003) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000)).

The Second Circuit has explained that "[w]hen a person who has no relationship to an ERISA plan is negotiating a contract with the plan," that person "is not an ERISA fiduciary with

respect to the terms of the agreement for his compensation." *F.H. Krear & Co.*, 810 F.2d at 1259. However, the negotiated contract must be the product of "an arm's length bargain presumably governed by competition in the marketplace." *Id*. Moreover, "after a person has entered into an agreement with an ERISA-covered plan, the agreement may give it such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation." *Id*.

"Of importance, courts have held that '[t]he determination of whether a person is a fiduciary is fact-based, and cannot be determined in a motion to dismiss.'" *Bernhard v. Cent. Parking Sys. of New York, Inc.*, 282 F.R.D. 284, 288 (E.D.N.Y. 2012) (quoting *Rispler v. Sol Spitz Co., Inc.*, No. 04-CV-01323, 2007 WL 1926531, at *4-5 (E.D.N.Y. June 06, 2007) ("The determination as to when a service provider assumes *de facto* control is fact-intensive: persons or entities who are not identified as fiduciaries can be *de facto* fiduciaries if they have discretionary authority over assets in an ERISA plan.")); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 241 (2d Cir. 2002) (finding that a complaint could survive a motion to dismiss based on the bare allegation that a defendant was a fiduciary); *In re Xerox Corp. Erisa Litig.*, 483 F. Supp. 2d 206, 213 (D. Conn. 2007) ("The question of whether one is a functional fiduciary is fact-intensive and the court must accept well-pled allegations as true when ruling on a motion to dismiss."); *Keir v. UnumProvident Corp.*, No. 02-CV-08781, 2003 WL 2004422, at *3 (S.D.N.Y. Apr. 29, 2003) (allegations that defendant exercised discretionary control over management of plan and that he personally breached fiduciary duty held sufficient to survive motion to dismiss).

Plaintiffs have alleged that PSI was a fiduciary, that it had a prior relationship to the Plan in that Pinto was both a member of the Board of Directors and President of PSI, and that there was a lack of market competition with respect to PSI's contract in that there was no competitive

9

bidding, there were "automatic" contract renewals, and because PSI's compensation relative to the market was excessive. (AC ¶¶ 36, 82-91, 96-99, 102).[4] The Court accepts Plaintiff's well-pled allegations as true and declines the invitation to engage in a fact-finding missive at this juncture. The parties are free to continue to probe this issue in discovery.

II. First and Third Claims for Relief: The Breach of Fiduciary Duties Claims

The Amended Consolidated Class Action Complaint presses two claims of breach of fiduciary duty under 29 U.S.C. § 1104(a)(1): the first claim for relief, which relates to excessive recordkeeping and administrative fees, and the third claim for relief, which relates to unreasonable investment management fees.

Under ERISA, fiduciaries "must adhere to the twin duties of loyalty and prudence." *Vellali v. Yale Univ.*, 308 F. Supp. 3d 673, 682 (D. Conn. 2018). Specifically, ERISA dictates that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and–
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . .

29 U.S.C. §§ 1104(a)(1)(A), (a)(1)(B).

A. Duty of Prudence

"The prudence of a fiduciary 'is measured according to the objective prudent person standard developed in the common law of trusts.'" *Sacerdote v. New York Univ.*, 9 F.4th 95, 107

---

[4] Defendants argue that the mere fact that Pinto was both a member of the Plan's Board of Directors and President of PSI is insufficient to create fiduciary status in PSI because Pinto did "not have the right to vote" in the decisions of the Board of Directors. (Def. Br. at 8 (citing Alin Declaration Exhibits E and F)). Whether or not the Court considers the By-Laws on this motion for the purpose sought by Defendants, Plaintiffs have plausibly pled a relationship between the Plan and PSI sufficient to withstand the motion to dismiss.

(2d Cir. 2021) (quoting *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984)). Because a fiduciary's prudence is to be assessed "under the circumstances then prevailing," 29 U.S.C. § 1104(a)(1)(B), a fiduciary's actions must not be judged from the vantage point of hindsight. *Sacerdote*, 9 F.4th at 107; *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*PBGC*"), 712 F.3d 705, 716 (2d Cir. 2013). "'[T]his standard focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.'" *Sacerdote*, 9 F.4th at 107 (quoting *PBGC*, 712 F.3d at 716).

Fiduciaries have "a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015). "An ERISA fiduciary's investment decisions also must account for changed circumstances and '[a] trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.'" *PBGC*, 712 F.3d at 717 (quoting *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006)). "A claim for breach of the duty of prudence will 'survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed' or 'that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'" *Sacerdote*, 9 F.4th at 107 (quoting *PBGC*, 712 F.3d at 716).

"While ERISA section 404(a) does not specifically address excessive fee claims, we are not without guidance." *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (considering the standard for excessive fee claims in the Investment Company Act context useful for such claims under ERISA). To establish a valid excessive fees claim, "the adviser-manager must charge a fee that is so disproportionately large that it bears no reasonable

relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1982). Courts consider the following factors "in applying this standard: (a) the nature and quality of services provided to fund shareholders; (b) the profitability of the fund to the adviser-manager; (c) fall-out benefits; (d) economies of scale; (e) comparative fee structures; and (f) the independence and conscientiousness of the trustees." *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989).

1. Excessive Recordkeeping and Administrative Fees

Plaintiffs' first claim for relief alleges that Defendants breached their duty of prudence by causing the Plan to incur unreasonable recordkeeping and administrative fees. Defendants argue that Plaintiffs' mere comparison of the Plan to purportedly dissimilar benefit plans cannot state a breach of prudence claim. They contend that "all Plaintiffs have shown is that the Plan's apples are more expensive than some other plans' oranges." (Def. Br. at 14). Specifically, Defendants argue that Plaintiffs' examples are principally "large corporate 401(k) plan[s]" such as Nike, Albertson's, Chevron, and ConocoPhillips (AC ¶¶ 88-91), which are all single-employer plans and not MEPs. Even if the Court accepted that single-employer plans cannot serve as meaningful comparators to MEPs, Plaintiffs also compare the Plan to CBERA, a MEP, alleging that the Plan's fees are five times higher than CBERA even though CBERA is a much smaller plan with less bargaining power. (*Id.* ¶ 95). Further, Defendants' argument that Plaintiffs' purported failure to identify the services PSI provides the Plan and those offered by any alleged comparator ignores the allegations concerning specific services that the Plan received under the incorporated Services Agreements, the number of participants in the Plan, PSI's fees each year, the number of participants in the comparator plans, and those plans' fees. (AC ¶¶ 9, 37-39, 41, 79, 82-85, 88-91,

95, 97-99). The Court cannot conclude that the pleading contains insufficient benchmarks for a meaningful comparison of fees at this stage of the proceedings, where such a conclusion evidently requires the Court to resolve fact disputes.

Plaintiffs alleged that Defendants failed to monitor and calculate the sum of PSI's asset-based charges and determine whether they corresponded to PSI's actual costs, failed to solicit competitive bids, and failed to use the Plan's size to negotiate lower fees. (*Id.* ¶¶ 36, 79-80, 83-86, 95, 102). These allegations are each, and taken together, a plausible breach of the duty of prudence. Simply put, Plaintiffs' allegations are sufficient to withstand the motion to dismiss the breach of duty of prudence claims set forth in the first claim for relief. *See, e.g.*, *Vellali*, 308 F. Supp. 3d at 685 (allegations of excessive fees resulting from "a decision-making process that was deficient in terms of monitoring, soliciting competitive bids, negotiating, and selecting a reasonably priced recordkeeper" stated a claim for breach of duty of prudence).

2. Excessive Investment Management Fees

Plaintiffs' third claim for relief alleges that Defendants breached their duty of prudence relating to investment fees by providing higher-cost options instead of lower-cost institutional versions of the same funds. Plaintiffs specifically allege that for approximately thirty of the Plan's investment options, Defendants provided a higher-cost version, even though lower-cost institutional versions were available. (AC ¶¶ 105-110). Plaintiffs contend that this information was included in fund prospectuses and would have been available to inquiring fiduciaries when the fiduciaries decided to offer the funds in the Plans. (Pl. Opp. at 16).

Defendants dispute the information contained in the chart in the Amended Consolidated Class Action Complaint, (AC ¶ 109), and contend that Plaintiffs' allegations concerning the Plan's investment management fees include other items like trustee and administrative fees while the

allegations concerning lower-cost alternatives excludes their negotiated investment management fees. (Def. Br. at 18-20). The Court, on a motion to dismiss, must draw reasonable inferences from the pleading in the nonmovants' favor and, in doing so, finds that Plaintiffs have alleged sufficiently that Defendants acted imprudently by failing to investigate and obtain the lower-cost shares to avoid wasting participants' assets on unnecessary fees. *See Sacerdote*, 9 F.4th at 108 (finding that "plaintiffs have sufficiently alleged that NYU acted imprudently in offering the number of retail-class shares identified in the complaint"); *see also Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014) (noting that ERISA defined-contribution "cases are inevitably fact intensive").

In sum, Plaintiffs have sufficiently alleged that it can be reasonably inferred that Defendants breached their duty of prudence by providing the higher-cost options. *PBGC*, 712 F.3d at 719. The motion to dismiss this claim is, therefore, denied.

B. Duty of Loyalty

The duty of loyalty commands that "a plan fiduciary 'shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan.'" *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570-71 (1985) (quoting 29 U.S.C. § 1104(a)(1)(A)). When making a decision regarding an ERISA defined-contribution plan, a fiduciary must do so with "an eye single to the interests of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982). The duty of loyalty requires fiduciaries to avoid "placing [their] interests or the interests of a third party above that of plan participants or beneficiaries." *Vellali*, 308 F. Supp. 3d at 688.

Plaintiffs seek to couple the allegations concerning Defendants' failures to monitor and negotiate PSI's fees and the automatic contract renewals without competition with the "systematic pattern of [PSI] using Plan assets to benefit itself" (AC ¶ 101), in an effort to allege a breach of the duty of loyalty. Specifically, Plaintiffs contend there existed a conflict of interest based upon Pinto's presence on the Board of Directors with PSI monitoring its own fees and that "a conflicted fiduciary may fail to use a thorough, prudent process precisely because its self-interested decision is already preordained." (Pl. Opp. at 18). "The issue, therefore, is whether the defendant took an action to affect plan participants adversely while performing a fiduciary function." *WorldCom*, 263 F. Supp. 2d at 768. Plaintiffs allege that Pinto was wearing his "non-fiduciary hat" when he "executed the Services Agreements not on behalf of the Plan but rather on behalf of [PSI] as [PSI's] President and CEO." (AC ¶ 37). Because Plaintiffs do not allege that Pinto's relationship with PSI "caused him to take or fail to take any actions detrimental to the Plan while he was wearing his 'fiduciary hat,'" *WorldCom*, 263 F. Supp. 2d at 768, they have not sufficiently alleged a breach of the duty of loyalty. *See In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 479 (S.D.N.Y. 2005) (finding that "because Plaintiffs' conflict-of-interest claim is based purely on the fact that Defendants' compensation was stock-based, it fails to state a claim for breach of fiduciary duty.").

Plaintiffs also cite to a "$7,370 payment [in 2010] to the Ritz Carlton Naples and $5,015 payment to the New York Palace Hotel," plus unspecified "board of director expenses" in support of their breach of the duty of loyalty claims. (AC ¶ 81). The hotel bills from 2010 and unspecified Board of Directors expenses, however, do not plausibly allege that Defendants' decisions favored themselves or a third party at the expense of Plan participants, or that Defendants intended to benefit anyone other than the Plan participants. "[A] theory of breach based on incidental benefit, without more, cannot support a breach of loyalty claim." *Vellali*, 308 F. Supp. 3d at 688. Plaintiffs

15

fail to allege sufficient facts "that would support an inference of disloyalty, as opposed to imprudence." *In re Am. Int'l Grp., Inc. ERISA Litig. II*, No. 08-CV-05722, 2011 WL 1226459, at *10 (S.D.N.Y. Mar. 31, 2011).

Separately, Plaintiffs' duty of loyalty theories are already a part of their duty of prudence theories. Plaintiffs essentially "recast purported breaches of the duty of prudence as disloyal acts," which is insufficient to state a breach of loyalty claim. *Sacerdote v. New York Univ.*, No. 16-CV-06284, 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017). The retread allegations only further complicate this pleading's already-muddied appearance. The splitting of hairs with respect to this additional theory of recovery adds nothing to Plaintiffs' claims. Accordingly, Defendants' motion is granted to the extent the first and third claims for relief allege a breach of the duty of loyalty.

III.   Second Claim for Relief: The Prohibited Transactions Claim

Plaintiffs second claim for relief alleges that PSI's provision of administrative services to the Plan violates ERISA's prohibited transaction rules. ERISA prohibits: (1) transactions between a plan and a "party in interest," 29 U.S.C. § 1106(a)(1), and (2) transactions between a plan and a fiduciary, *id*. § 1106(b).

Plaintiffs allege that "Defendants caused the Plan to engage in a transaction that they knew or should have known constituted an exchange of property between the Plan and a party in interest in violation of 29 U.S.C. § 1106(a)(1)(A); engage in a transaction they knew or should have known constituted the furnishing of services between the Plan and a party in interest in violation of 29 U.S.C. § 1106(a)(1)(C); and engage in a transaction they knew or should have known constituted a transfer of Plan assets to a party in interest in violation of 29 U.S.C. § 1106(a)(1)(D)." (AC ¶ 131). "Congress enacted ERISA § 406(a)(1), which supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, § 404(a), by categorically barring certain transactions deemed

16

likely to injure the pension plan." *Cunningham*, 2017 WL 4358769, at *9 (internal quotation marks and citation omitted). Plaintiffs "must allege conduct that is plausibly actionable under the relevant statute and must go beyond creating a 'sheer possibility that a defendant has acted unlawfully.'" *Leber v. Citigroup, Inc.*, No. 07-CV-09329, 2010 WL 935442, at *9 (S.D.N.Y. Mar. 16, 2010) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiffs have alleged sufficiently that PSI is a party in interest. *See* 29 U.S.C. § 1002(14). And while "reasonable" payments for necessary services qualify for an exemption as Defendants argue, a plan is "entitled to recover" any excess above a reasonable fee. *N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179, 183 (2d Cir. 1994); 29 U.S.C. § 1108(b)(2)(A). Plaintiffs have alleged that PSI received excessive asset-based payments that exceeded reasonable compensation for its services rendered to the Plan. (AC ¶¶ 38, 84, 95-99, 131).

Plaintiffs further allege that Defendants "dealt with the assets of the Plan in their own interest or for their own account, in violation of 29 U.S.C. § 1106(b)(1); acted in a transaction involving the Plan on behalf of a party whose interests were adverse to the interests of the Plan, its participants and beneficiaries, in violation of 29 U.S.C. § 1106(b)(2); and received consideration for their own personal account from parties dealing with the Plan in connection with transactions involving the assets of the Plan, in violation of 29 U.S.C. § 1106(b)(3)." (AC ¶ 129). Defendants argue that because PSI was not a Plan fiduciary, this aspect of Plaintiff's claim fails. As set forth above, however, the Court declines to hold as a matter of law at this stage in the proceedings that PSI was not a fiduciary. Defendants' remaining argument that PSI's interests were not adverse to the Plan because PSI was "merely providing service to the Plan for a fee," *Patrico v. Voya Fin., Inc.*, No. 16-CV-07070, 2018 WL 1319028, at *5-6 (S.D.N.Y. Mar. 13, 2018), ignores Plaintiffs'

17

allegations, including, *inter alia*, that PSI's fees were significantly higher than prevailing market rates. (AC ¶¶ 88-99). Accepting Plaintiffs' allegations as true and drawing inferences in a light most favorable to Plaintiffs, as the Court must at this stage, the Court concludes that Defendants have failed to show that the second claim for relief should be dismissed.

IV.     Fourth Claim for Relief: The Breach of Duty to Monitor Claim

Plaintiffs' fourth claim for relief for breach of the duty to monitor is alleged against the Board of Directors and its individual members. Although "[t]he text of ERISA does not explicitly impose on plan fiduciaries a duty to monitor," courts have found that ERISA imposes a duty on plan fiduciaries to monitor appointed fiduciaries. *Cunningham*, 2017 WL 4358769, at *11; *Vellali*, 308 F. Supp. 3d at 691-92; *Polaroid*, 362 F. Supp. 2d at 477; *see also* 29 C.F.R. § 2509.75-8 ("At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.").

Defendants principally contend that the duty to monitor claim must be dismissed because Plaintiffs have failed to adequately allege any underlying fiduciary breach. (Def. Br. at 25). However, that argument does not carry the day because, as set forth *supra*, the Court has determined that Plaintiffs have plausibly alleged a breach of the fiduciary duty of prudence.

Defendants also argue that Plaintiffs have not sufficiently alleged what the Plan's monitoring processes were or what systems should have been in place to show how the monitoring process was deficient. (*Id.*). The claim survives a motion to dismiss when it is alleged "that the fiduciaries responsible for appointing other fiduciaries utterly "failed to establish a procedure for monitoring [the appointed fiduciaries] and [failed] to review those fiduciaries' performance." *Am.*

*Int'l Grp.*, 2011 WL 1226459, at *10 (quoting *In re Pfizer Inc. ERISA Litig.*, No. 04-CV-10071, 2009 WL 749545, at *9 (S.D.N.Y. Mar. 20, 2009)).

Plaintiffs, however, have alleged that the monitoring Defendants "fail[ed] to monitor their appointees and delegees, to evaluate their performance, or to have a system in place for doing so[;] . . . fail[ed] to ensure that the monitored fiduciaries had a prudent process in place for evaluating the Plan's administrative fees and ensuring that the fees were competitive, including a process to identify and determine the amount of all sources of compensation to the Plan's recordkeeper, and a process to periodically obtain competitive bids to determine the market rate for the services provided to the Plan; and . . . fail[ed] to remove appointees whose performance was inadequate in that they continued to allow excessive administrative fees." (AC ¶ 153). "[B]ecause the appropriate ERISA mandated monitoring procedures vary according to the nature of the Plan at issue and other facts and circumstances, an analysis of the precise contours of the defendants' duty to monitor at this stage is premature." *Xerox*, 483 F. Supp. 2d at 215; *see also Am. Int'l Grp.*, 2011 WL 1226459, at *10; *Vellali*, 308 F. Supp. 3d at 691-92. Accordingly, Defendants' motion to dismiss the fourth claim for relief is denied.

## CONCLUSION

For the reasons outlined above, Defendants' motion to dismiss is GRANTED IN PART. Plaintiffs' first and third claims only to the extent they allege breaches of the duty of loyalty are dismissed. The parties shall proceed with discovery on Plaintiffs' remaining claims—the first and third claims alleging breaches of the duty of prudence, the second claim for prohibited transactions, and the fourth claim for breach of the duty to monitor—in accordance with the established schedule, as amended. (*See* Doc. 118; Doc. 136).

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 93 and Doc. 105.

                                                **SO ORDERED:**

Dated: White Plains, New York
            March 23, 2022

_____
PHILIP M. HALPERN
United States District Judge