UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IMRAN KHAN, et al.,

                              Plaintiffs,

                -against-

BOARD OF DIRECTORS OF PENTEGRA
DEFINED CONTRIBUTION PLAN, et al.,

                              Defendants.

**OPINION & ORDER**

20-CV-07561 (PMH)

PHILIP M. HALPERN, United States District Judge:

Imran Khan, Joan Bullock, and Pamela Joy Wood ("Plaintiffs") seek to certify all claims in this action for breaches of fiduciary duties and prohibited transactions under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, et seq. (Doc. 92, "AC"), as a class action under Federal Rule of Civil Procedure 23(b)(1). (Doc. 170; Doc. 171, "Pl. Br."; Doc. 172, "Doles Decl."; Doc. 173; Doc. 174; Doc. 175; Doc. 176; Doc. 181, "Reply Br."). The Board of Directors of Pentegra Defined Contribution Plan (the "Plan"), Pentegra Services Inc. ("PSI"), John E. Pinto, Sandra L. McGoldrick, Lisa A. Schlehuber, Michael N. Lussier, William E. Hawkins, Jr., Brad Elliott, George W. Hermann, and John Does 1-20 (collectively, "Defendants"), oppose Plaintiffs' motion. (Doc. 177, "Def. Br."; Doc. 178, "Adams Decl.").

For the reasons set forth below, Plaintiffs' motion for class certification is GRANTED.

**STANDARD OF REVIEW**

Certification of a class requires satisfaction of the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Specifically, Plaintiffs must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the

class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).[1] If the Rule 23(a) prerequisites have been satisfied, Plaintiffs must then show by a preponderance of the evidence that the proposed class is "maintainable" by meeting at least one of the requirements set forth in Rule 23(b) of the Federal Rules of Civil Procedure. *See Dukes*, 564 U.S. at 345.

Plaintiffs need establish only one basis for certification under Rule 23(b). *See Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017). Here, Plaintiffs seek to certify the class under Rule 23(b)(1), which provides, in relevant part, that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . (1) prosecuting separate actions by or against individual class members would create a risk of:

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests . . . .

Fed. R. Civ. P. 23(b)(1).

"The plaintiff carries the burden of establishing by a preponderance of the evidence that each of the requirements of Rule 23 is met." *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 70 (S.D.N.Y. 2022). "The Court's determination involves a 'rigorous analysis,' to ensure actual, not presumed, conformance with Rule 23." *Id.* "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

plaintiff's cause of action." *Id.* "Merit based inquiries, at the class certification stage, however, are permitted only to the extent that they are relevant to determining whether the Rule 23 prerequisites are satisfied." *Id.*

## ANALYSIS

### I.    Numerosity

Plaintiffs need only establish that there are 40 or more members of the putative class for the Court to presume numerosity has been met. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs allege that the proposed class had over 26,000 participants as of year-end 2014 and maintained similar numbers throughout the class period. (AC ¶ 9; Doles Decl., Ex. 1 at 2, Line 6(g)). Defendants do not appear to take issue with the numerosity requirement. Accordingly, because the class here consists of potentially thousands of members, the numerosity requirement is met.

### II.    Commonality

Defendants argue that Plaintiffs have failed to satisfy the commonality requirement in Rule 23(a). "To satisfy commonality, plaintiffs must affirmatively demonstrate by a preponderance of the evidence that there are questions of law or fact common to the class." *Elisa W. v. City of New York*, ---F.4th ---, 2023 WL 6066476, at *4 (2d Cir. Sept. 19, 2023). "[C]ommonality turns on the ability of the action to 'generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting *Dukes*, 564 U.S. at 350). "Thus, commonality exists if there is a question such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Dukes*, 564 U.S. at 350). "This is the 'glue' that holds class members' claims together." *Id.* (quoting *Dukes*, 564 U.S. at 352).

The claims at issue in this case charge Defendants with breaching their fiduciary duties, in part by incurring unreasonable and excessive recordkeeping and administrative fees, thereby causing losses to the Plan.[2]  "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege facts which, if true, would show that the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 121 (S.D.N.Y. 2015), *aff'd*, 843 F.3d 561 (2d Cir. 2016); *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000)). "The burden under ERISA [then] shifts to the defendants to disprove any portion of potential damages by showing that the loss was not caused by the breach of fiduciary duty." *Sacerdote v. New York Univ.*, 9 F.4th 95, 113 (2d Cir. 2021).

To establish a valid excessive fees claim, "the adviser-manager must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Gartenberg v. Merrill Lynch Asset Mgmt.*, 694 F.2d 923, 928 (2d Cir. 1982). Courts consider the following factors "in applying this standard: (a) the nature and quality of services provided to fund shareholders; (b) the profitability of the fund to the adviser-manager; (c) fall-out benefits; (d) economies of scale; (e) comparative fee structures; and (f) the independence and conscientiousness of the trustees." *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 409 (2d Cir. 1989).

Defendants contend that Plaintiffs fail to satisfy the commonality requirement because the proof that Plaintiffs intend to submit to establish the elements of the underlying claims fails to

---

[2] Plaintiffs' first claim for relief alleges that Defendants caused the Plan to incur unreasonable recordkeeping and administrative fees, the second claim for relief alleges that PSI's provision of administrative services to the Plan violates ERISA's prohibited transaction rules, and their fourth claim for relief alleges breach of the duty to monitor fiduciaries. Plaintiffs, in a footnote in their moving brief, have withdrawn their third claim for relief. (Pl. Br. at 8 n.7). The parties, as directed herein, shall prepare and file an Order and Stipulation withdrawing that claim for relief .

meet the requisite standard to demonstrate Rule 23 compliance: "whether generalized evidence could be offered to prove [the] elements [of the claim] on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Commc'ns. Inc.*, 780 F.3d 128, 138 (2d Cir. 2015)). Defendants' position is that because each adopting employer entered into its own separate services agreement with the Plan (*see, e.g.*, Ex. A), the services any given participant received, and the fees that participants paid, resulted from numerous intervening decisions by multiple actors. (Def. Br. at 9). In other words, Defendants argue that the only way to answer the question of whether excessive fees were paid by Plan participants is to turn to hundreds of different contracts between the Plan and participating employers, which would reveal varying services, varying fee structures, and varying methods or means of calculating the fees participants paid. (*Id*. at 9-13).

Plaintiffs' breach of fiduciary duty claims, however, are brought on behalf of the Plan. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15-CV-09936, 2017 WL 3868803, at *5 (S.D.N.Y. Sept. 5, 2017) ("Defendants also argue that resolving this case involves a massive series of individualized analyses that turn on when and in which funds each participant invested. This argument misapprehends Plaintiffs' claims, which are brought on behalf of the Plan."). The extant claims concern not hundreds of separate plans, but a single Plan—albeit a multiple employer plan.[3] They concern a single services agreement between the Plan and PSI.

This case is therefore unlike *Negron*, a breach of contract health plan case on which Defendants rely. No. 16-CV-01702, 2021 WL 2010788 (D. Conn. May 20, 2021). The District Court in that case found commonality lacking, explaining that "the common question that must exist across the Class and Subclass plans hangs on the determination of how much each putative

---

[3] Indeed, Defendants describe the Plan as "work[ing] like a single employer defined contribution plan." (Doles Decl., Ex. 3 at 1).

Class member should have paid for prescription drugs. . . . If the amount each putative Class member should have paid can only be determined by consulting varying terms of individual plans, then there is no common question." *Id*. at *15.  Determining losses in this case, on the other hand, requires a comparison of how much the Plan actually paid in the aggregate each year to how much the Plan would have paid but for the breach. *See Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). Plaintiffs allege that the Plan overpaid PSI by $2 million per year and that these "[t]otal administrative expenses includ[ing] administrative fees, professional fees, transactional fees and board of director expenses [] are paid by the Plan or charged against the Plan's assets." (Doles Decl., Ex. 1 at 6, 33; *id*., Ex. 2 at 6, 37; *id*., Ex. 16 at 5; *id*., Ex. 17 at 11, 67).

Thus, liability here depends on whether Defendants breached fiduciary duties to the Plan as a whole by, *inter alia*, causing the Plan to pay excessive fees to PSI. Generally, "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 74 (S.D.N.Y. 2006). The answers to the common questions presented here—whether Defendants are fiduciaries; whether they breached their fiduciary duties by causing the Plan to pay excessive record-keeping fees or caused a prohibited transaction; whether the Plan suffered losses from those breaches; how to calculate the Plan's losses—resolve issues central to the validity of the claims in this case. *See Vellali v. Yale Univ.*, 333 F.R.D. 10, 16 (D. Conn. 2019); *Sacerdote v. New York Univ.*, No. 16-CV-06284, 2018 WL 840364, at *3 (S.D.N.Y. Feb. 13, 2018); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 160 (S.D.N.Y. 2017); *Moreno*, 2017 WL 3868803, at *5.

Accordingly, Plaintiffs have satisfied the commonality requirement.

III.   <u>Typicality</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Elisa W.*, 2023 WL 6066476, at *9; *Sacerdote*, 2018 WL 840364, at *3.

The analysis of this factor is similar to the previous analysis, as the commonality and typicality requirements "tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5. Both the named Plaintiffs and the class members they seek to represent participated in the same Plan; were subject to the same course of conduct by the same Defendants regarding the Plan's recordkeeping services; assert the same claims—breaches of fiduciary duty and prohibited transactions in violation of ERISA—and rely on the same legal arguments. *See e.g., Vellali*, 333 F.R.D. at 17; *Leber*, 323 F.R.D. at 162; *Sacerdote*, 2018 WL 840364, at *3; *Moreno*, 2017 WL 3868803, at *7. The evidence as to the Plan's management by Defendants will be the same for each class member—the adjudication of the breach of fiduciary duty claims will not turn on any individual class member's circumstance.

Defendants echo their contentions regarding the commonality requirement, arguing that absent class members paid different fees under varying fee structures for services differing from that of the named Plaintiffs. (Def. Br. at 14-15). Plaintiffs again point out that the Plan has a single fee schedule and Plaintiffs and all class members assert claims on behalf of the Plan. (Pl. Br. at 14-16; Reply at 8). Even if adopting employers' conduct resulted in fee variations among class members, that would be the type of "minor variations in the fact patterns underlying individual claims" that do not defeat typicality. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

Accordingly, Plaintiffs have satisfied the typicality requirement.

IV.   <u>Adequacy</u>

Under Rule 23(a)(4), the Court "must examine whether the named plaintiff's interests are antagonistic to those of the other proposed members of the class." *Buffington*, 342 F.R.D. at 72. The Rule 23(a)(4) adequacy requirement "serves to uncover conflicts of interest between named parties and the class[es] they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Buffington*, 342 F.R.D. at 72.

Plaintiffs are adequate because they have an interest in vigorously pursuing the claims of the class; they seek the same relief as the class members they seek to represent; and they do not have interests that are antagonistic to the class members. Plaintiffs and the putative class members share an interest in remedying any alleged mismanagement of the Plan in violation of ERISA and Plaintiffs' counsel is qualified to conduct this litigation.[4]

Defendants' argument that Plaintiffs are not adequate class representatives because they have "completely outsourced their responsibilities to their counsel" (Def. Br. at 20), is unpersuasive. Defendants point to Plaintiffs' deposition testimony that they contend establishes that Plaintiffs do not "have any personal knowledge of the facts underlying this suit." (Def. Br. at 17). But that Plaintiffs may not have had a concern with their Plan's fees before speaking with counsel is not unusual in a case of this type. "The claims here involve technical financial decisions affecting billions of dollars in assets and Plan fiduciaries' compliance with the requirements of ERISA. It is understandable, and excusable, that Plaintiffs, who are not lawyers or investment professionals, may have had difficulty answering questions about the claims." *Moreno*, 2017 WL

---

[4] Defendants do not oppose the request to appoint Schlichter Bogard & Denton LLP as class counsel should a class be certified.

3868803, at *7 (citing *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, No. 08-CV-05310, 2016 WL 7409840, at *5 (S.D.N.Y. Nov. 4, 2016) ("[I]t is well settled that a proposed representative's lack of knowledge is rarely disqualifying.")).

Plaintiffs testified that they generally understand the nature of their claims, their duties as class representatives, that they have reviewed court documents, participated in the litigation including searching for documents responsive to Defendants demands and sitting for deposition, and they monitor the progress of the action and remain in communication with counsel. (*See* Doles Decl., Ex. 19 at 106-109, 113-118, 120-121, 124-134, 178-180; *id*., Ex. 20 at 107-108, 111-114, 116-117, 123-125, 127, 136, 168; *id*, Ex. 21 at 98-99, 101-104, 106-110, 112-114, 143-144, 150-151; *see also* Docs. 174-176).

Accordingly, the adequacy requirement is satisfied.

V.    Rule 23(b)(1)

As Plaintiffs have satisfied the requirements of Rule 23(a), the Court is required to assess the class under Rule 23(b)(1). "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Taylor v. United Techs. Corp.*, No. 06-CV-01494, 2008 WL 2333120, at *6 (D. Conn. June 3, 2008).

Defendants argue that because they "object" to certification, Rule 23(b)(1)(A) certification is precluded. (Def. Br. at 21-22). "Although some courts interpret Rule 23(b)(1)(A) as protecting defendants only, clearly all litigants as well as the courts benefit from consistency in the adjudication of claims of individual class members." *Ingles v. City of New York*, No. 01-CV-08279, 2003 WL 402565, at *7 (S.D.N.Y. Feb. 20, 2003) (Chin, J.).

"The language of subdivision (b)(1)(A), addressing the risk of inconsistent adjudications, speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a

fiduciary responsibility, to treat the members of the class alike." *Mcalister v. Metropolitan Life Insurance Company*, No. 18-CV-11229, 2023 WL 5769491, at *8 (S.D.N.Y. Sept. 7, 2023) (quoting *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006)). "Accordingly, most ERISA class action cases are certified under Rule 23(b)(1)." *Id.*; *see also Ferguson v. Ruane Cuniff & Goldfarb Inc.*, No. 17-CV-06685, 2021 WL 3667979, at *7 (S.D.N.Y. Aug. 17, 2021) ("The derivative nature of ERISA § 502(a)(2) claims makes them paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class because any decision regarding whether the defendants breached their fiduciary duties would necessarily affect the interests of other participants."); *Carollo v. United Cap. Corp.*, 528 F. Supp. 3d 37, 58 (N.D.N.Y. 2021) ("[T]he paradigmatic case for granting class certification under Rule 23(b)(1)(A) is one arising under ERISA, in which even compensatory damages claims would ultimately go to the ERISA plan, not to any individual plaintiff.").

Defendants also argue that the same individual questions about liability, causation, and damages that apply to the Rule 23(a) factors doom certification under Rule 23(b)(1), and in particular, that when "'the proposed class is comprised of' hundreds of different employer arrangements 'many of which have different . . . fees,' 'individual adjudications would not necessarily be dispositive of the interests of other members.'" (Def. Br. at 23 (quoting *Wood v. Prudential Ret. Ins. & Annuity Co.*, No. 15-CV-01785, 2017 WL 3381007, at *5 (D. Conn. Aug. 4, 2017))). As set forth above, this case concerns a single Plan, not "thousands of individual retirement plans," *Wood*, 2017 WL 3381007, at *5, and Plaintiffs' class claims are derivative in nature, not individualized, such that any monetary relief will be paid to the Plan and the Plan fiduciaries would be responsible for allocating the recovery among participants, *Moreno*, 2017 WL 3868803, at *9.

Defendants' argument that Rule 23(b)(1)(B) certification is inappropriate because this is not a "limited fund" case ignores the propriety of certification under this rule in "actions charging a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of beneficiaries, requiring an accounting or similar procedure to restore the subject of the trust." *Sacerdote*, 2018 WL 840364, at *6; *Leber*, 323 F.R.D. at 165; *see also Moreno*, 2017 WL 3868803, at *9 ("[C]ourts regularly certify 23(b)(1)(B) class actions in non-limited fund situations, particularly in ERISA cases alleging breach of a fiduciary duty . . . including those within this Circuit after *LaRue* and *Wal-Mart*.").

Accordingly, the class is properly certified under Rule 23(a) and Rule 23(b)(1)(A) or 23(b)(1)(B).

## <u>CONCLUSION</u>

Based upon the foregoing, Plaintiffs' motion for class certification is GRANTED.

The Court certifies the following class:

All participants and beneficiaries of the Pentegra Defined Contribution Plan for Financial Institutions from September 15, 2014 through the date of judgment, excluding Defendants.

The Court appoints Schlichter, Bogard & Denton LLP as class counsel and appoints each of the named Plaintiffs as representatives of the class.

The Court grants in part the request to maintain under seal (Doc. 179), on consent of the parties and in accordance with *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006), the Doles Decl., Exs. 6, 11, and 12, and Adams Decl., Exs. A and B (Doc. 185-6; Doc. 185-3; Doc. 185-4; Doc. 178-1; Doc. 178-2); and deems withdrawn in accordance with Defendants' letter (Doc. 186) the request to maintain under seal Doles Decl., Exs. 9 and 16, and Adams Decl., Exs. C and D (Doc. 185-2; Doc. 185-5; Doc. 178-3; Doc. 178-4). Plaintiffs shall file

11

Doles Decl., Exs. 9 and 16, and Defendants shall file Adams Decl., Exs. C and D, on the public docket by October 6, 2023.

The parties are directed to, by October 6, 2023, meet and confer and file an Order and Stipulation, for the Court's signature, withdrawing Plaintiff's third claim for relief.

The Clerk of Court is respectfully directed to terminate the pending motions (Doc. 170; Doc. 179).

**SO ORDERED:**

Dated:    White Plains, New York
          September 26, 2023

_____
PHILIP M. HALPERN
United States District Judge