**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IMRAN KHAN, et al., | |
| *Plaintiffs*, | |
| | No. 7:20-cv-07561 |
| v. | |
| BOARD OF DIRECTORS OF PENTEGRA DEFINED CONTRIBUTION PLAN, et al, | |
| *Defendants*. | |

**[PROPOSED] JOINT THIRD AMENDED FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**

**INTRODUCTION**

Plaintiffs Imran Khan, Joan Bullock, and Pamela Joy Wood ("Plaintiffs") are current or former participants in the Pentegra Defined Contribution Plan for Financial Institutions (the "Plan") who brought this action seeking legal and equitable relief against Defendants the Board of Directors of Pentegra Defined Contribution Plan (the "Board"), Pentegra Services Inc. ("PSI"), John E. Pinto, Sandra L. McGoldrick, Lisa A. Schlehuber, Michael N. Lussier, William E. Hawkins, Jr., Brad Elliott, and George W. Hermann (collectively "Defendants").

After a jury trial, the jury entered a verdict in favor of Plaintiffs on their legal claims that **[insert Defendants found by jury to be fiduciaries]** breached their fiduciary duties of prudence under 29 U.S.C. § 1104(a)(1)(B) by causing the Plan to incur unreasonable administrative fees (Dkt. 92, ¶¶ 116–125, Count I). In reaching their verdict, the jury found that **[insert Defendants found by jury to be fiduciaries]** were fiduciaries to the Plan who breached their duties, thereby causing a loss to the Plan.

The jury awarded damages in the amount of **[$ insert]**. Damages were determined based on the difference between the fee the Plan paid to PSI for services and a reasonable fee. That figure was brought forward through February 16, 2024, to account for the lost investment opportunity that would have been realized if those funds had remained in the Plan. *Browe v. CTC Corp.*, 15 F.4th 175, 199 (2d Cir. 2021); *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985); *Vellali v. Yale Univ.*, No. 16-1345, 2022 U.S. Dist. LEXIS 192235, at *51–52 (D. Conn. Oct. 21, 2022) (citing *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016)) (noting same). **[Insert Defendants found by jury to be fiduciaries]** were found to be jointly and severally liable for the Plan's losses.

The Court is now required to enter findings of fact and conclusions of law on Plaintiffs' equitable claims. *See* Dkt. 190 at 9. Plaintiffs seek the following equitable relief in addition to the

money damages awarded by the jury: (1) disgorgement of all payments made by the Plan to PSI that were prohibited under 29 U.S.C. §§ 1106(a)(1)(A), (C), and (D) and 1106(b)(1)–(3) (Dkt. 92, ¶¶ 126–142, Count II; *see id.* at 51, Prayer for Relief);[1] (2) the issuance of two Requests for Proposal ("RFP") by a Court-appointed independent fiduciary for services presently provided to the Plan by PSI (including Empower) for recordkeeping and administrative services, and ERISA § 3(16) [29 U.S.C. § 1002(16)] plan administrator services (*id.*); (3) the removal of the current Plan fiduciaries and appointment of new Board members by a Court-appointed independent fiduciary (*id.*); and (4) an order barring PSI from providing future services to the Plan for a period of six (6) years (*id.*).

The Court finds that the requested equitable relief is appropriately tailored to the circumstances of this case. The findings of fact and conclusions of law necessary for the Court's entry of equitable relief are set forth below. The equitable remedies are predicated on the findings of the jury. *See* Dkt. 190 at 6 (first conducting a jury trial on legal claims, "'including any issues of fact common' with the balance of Plaintiffs' requested relief") (citation omitted).

**Defendants' Response:** As discussed below, the disgorgement of PSI's fees represents an impermissible windfall in light of the jury's damages award, and no Defendants' conduct was so egregious to warrant equitable relief regarding the removal of fiduciaries and selection of replacement service providers.

---

[1] As set forth below, the Court finds that Defendants committed prohibited transactions under § 1106(a) and failed to prove that these transactions were exempt under § 1108. The Court finds that the jury's award for Plaintiffs' § 1104(a) claims serves as an offset to the Court's award for Plaintiffs' claims under § 1106(a). *See* Dkt. 149 at 17 ("a plan is 'entitled to recover' any excess above a reasonable fee" when the § 1106(a) transaction does not qualify for an exemption under § 1108(b)(2)) (quoting *N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179, 183 (2d Cir. 1994) and citing 29 U.S.C. § 1108(b)(2)(A)).

**Defendants' Suggested Revision**: For the reasons set forth below, the Court declines to award Plaintiffs' requested equitable relief.

**PLAINTIFFS' PROPOSED FINDINGS OF FACT**

The Court enters the following findings of fact on Plaintiffs' request for equitable relief based on prohibited transactions under 29 U.S.C. § 1106. The other requested equitable relief encompasses issues of fact common to the jury's verdict. Accordingly, it is unnecessary for the Court to issue separate findings of fact as to that requested relief.

Defendants submit that the Findings of Fact and Conclusions of Law should be revised following the conclusion of the jury portion of the trial to include only those Defendants found as Plan fiduciaries with respect to the compensation paid to PSI. They also object to any conclusions of law related to 29 U.S.C. § 1106(a) because Plaintiffs are seeking no additional equitable relief in connection with a prohibited transaction under § 1106(a). Defendants include responses to certain findings of fact or conclusions of law for which they currently object. Defendants object that the equitable relief Plaintiffs seek is appropriate.

## I.    The Plan's Contracts with PSI.

1.    As fiduciaries to the Plan, **[insert Defendants]** hired or retained PSI as the exclusive provider of recordkeeping and administrative services to the Plan until 2023, when Empower Retirement, LLC ("Empower") provided the Plan with recordkeeping services. The services provided by PSI were set forth in "Services Agreement(s)" between PSI and the Plan, which were renewed by the Board in 2013 and again on December 1, 2018, for a five-year term. (J)TX0718 (2013); (J)TX0719 (2018).[2] Defendant John E. Pinto ("Pinto") executed both

---

[2] Trial Exhibits are noted as "TX." Joint Admitted Trial Exhibits are noted as "(J)TX." *See* Dkt. 222.

agreements on behalf of PSI. *Id.*

2.      For services rendered to the Plan, PSI received a fee based on a percentage of assets invested in the Plan (or an asset-based fee), as well as annual fees and per-participant fees. (J)TX0718 at 20–22 (2013); (J)TX0719 at 19–20 (2018). All fees at issue were paid from the Plan's assets, including those paid by participating employers, because they were first placed in a trust account for the benefit of the Plan and then paid to PSI. Anticipated Jury Trial Testimony; Anticipated Non-Jury Trial Testimony (Dkt. 203-1 ¶ 7); (J)TX0960 ¶ 20. The at-issue fees are itemized in TX0937 (row 24).

**Defendants' Response**: Employer-paid fees are not at issue, and while they were paid to the Plan to be passed through to PSI, they were not held in trust for the benefit of the Plan or its participants.

**Defendants' Suggested Revision**:  All fees at issue were paid from the Plan's assets.

3.      Before engaging PSI in 2013, the Board engaged CEM Benchmarking to provide an evaluation of the Plan's fees. (J)TX0960 ¶ 22. CEM presented the results of its analysis to the Board. (J)TX0089.

4.      The Board also engaged Thomas White of Rimon Law as independent counsel to assist the Board in determining whether to renew its services agreement with PSI, and if so, to represent the Board in any subsequent negotiations with PSI. (J)960 ¶ 23.

5.      Before renewing PSI's engagement in 2018, the Board engaged ThirtyNorth Investments, LLC to provide an analysis of the Plan's fees. (J)TX0960 ¶ 25. ThirtyNorth presented the results of its analysis to the Board. (J)TX0180.

## II.      PSI Profited from Its Relationship with the Plan.

6.      The Plan was the second-largest revenue generator to PSI, generating between

approximately $9 million and $10 million of revenue to PSI annually. *See, e.g.,* (J)TX014 at 7; Anticipated Jury Trial Testimony; Anticipated Non-Jury Trial Testimony (Dkt. 203-1 ¶ 8).

7.     From the revenue derived from services it provided to the Plan, PSI earned a profit. *E.g.,* (J)TX0155 at 8.

8.     While the Plan was PSI's second-largest client measured by revenue, the percentage of PSI's revenue derived from the Plan decreased as PSI grew its non-Plan client base. Anticipated Jury Trial Testimony.

### III.     PSI's and the Plan's Governance Structures.

9.     PSI maintained a Board of Directors that oversaw the operations and services provided by PSI. Defendants Pinto and Sandra L. McGoldrick ("McGoldrick") served as members of the PSI Board. *E.g.,* (J)TX0299. While members of the PSI Board, Pinto and McGoldrick also served as members of the Board for the Plan. Dkt. 151 ¶¶ 19–20; *e.g.,* (J)TX0012; (J)TX0025; (J)TX0030. Mr. Pinto was a non-voting member of the Plan's Board.

10.     Until April 1, 2023, Pinto was the President and Chief Executive Officer ("CEO") of PSI. (J)TX0056 at 2. Eric Wietsma succeeded Pinto and currently serves on both the PSI Board and the Board for the Plan as a non-voting member. (J)TX0060; (J)TX0335.

11.     As members of the PSI Board, Pinto and McGoldrick were knowledgeable of the financial results of PSI because they were presented additional detailed financial reports, even beyond what the Plan's Board received during those Board meetings. Anticipated Jury Trial Testimony; *see, e.g.,* (J)TX0303 at 1–2. Mr. Pinto's knowledge of PSI's financial results was by virtue of his role as PSI President and CEO.

12.     The Court finds that the Board was aware of the importance of the Plan and the revenue it provided to PSI's business. *E.g.,* (J)TX0005 at 4–5; (J)TX0014 at 4–6; (J)TX0155 at 4.

Given the "importance" of the Plan to its business, PSI presented to the Board the operating results of PSI twice a year, which included the revenue and profitability of PSI. *E.g.,* (J)TX0009 at 4–5; (J)TX0014 at 4–6.

13. PSI presented the Board information about its profitability, including avenues to generate new business for the company. *E.g.,* (J)TX0018 at 6; (J)TX0020 at 12. PSI discussed with the Board plans to increase PSI's profitability, including the estimated time (in years) for PSI's defined contribution retirement plan business to become profitable. *E.g.,* (J)TX0011 at 10; (J)TX0014 at 5–6; (J)TX0020 at 7, 10–11; (J)TX0021 at 10; (J)TX0022 at 7.

**Defendants' Suggested Insertion:** The Board was advised by independent counsel (Mr. White) that, consistent with Department of Labor Guidance, fiduciaries should consider the financial viability of key service providers. *See, e.g.,* (J)TX0478; (J)TX0018 at 6; (J)TX0020 at 12.

14. PSI informed the Board that its growth could potentially enable it to recruit new financial institutions to participate in the Plan, thereby growing the Plan's assets. Anticipated jury trial testimony.

## IV.    The total payments the Plan made to PSI.

15. The total amount that the Plan paid to PSI from its trust account from 2014 through October 2023 is set forth in the following table. TX0937 (2014–2023 General Ledgers data); (J)TX0779–(J)TX0787 (2014–2022 Plan Forms 5500); Anticipated Non-Jury Trial Testimony (Dkt. 203-1 ¶ 8); (J)TX0960 ¶ 28. These amounts exclude transactional-based fees, such as for loans and distributions. Anticipated Non-Jury Trial Testimony (Dkt. 203-1 ¶ 8).

| Year | Amount |
|------|--------|
| 2014 | $8,897,868 |
| 2015 | $9,235,440 |
| 2016 | $9,202,754 |

| Year | Amount |
|---|---|
| 2017 | $9,305,355 |
| 2018 | $9,685,962 |
| 2019 | $9,431,780 |
| 2020 | $9,311,403 |
| 2021 | $10,481,893 |
| 2022 | $9,614,215 |
| 10/2023 | $7,441,159 |
| **Total** | $92,607,829 |

**Defendants' Response:** The total fees the Plan paid PSI includes fees that are not at issue (*e.g.*, employer-paid fees and transactional fees), and also includes the portion of PSI's fees that it would have been paid even if it had charged what Plaintiffs contend is a reasonable fee. This finding of fact should be revisited following the jury portion of trial to reflect the amount of fees at issue as determined by the jury.

16.     Plaintiffs' expert, Clay Busker, brought forward the amounts paid by the Plan since October 1, 2014, using the S&P Index and the Plan's return to account for lost investment opportunity. Dkt. 203-1 ¶ 9. The Vanguard Institutional Index Fund is an institutional investment in the S&P 500 index. Accounting for lost investment opportunity through February 16, 2024, the total amounts are $130,493,728 (Plan return), and $157,033,846 (VIIIX), using each respective measure. Anticipated Non-Jury Trial Testimony (Dkt. 203-1 ¶¶ 8, 11).

**Defendants' Response:** Mr. Busker's anticipated testimony about the present value of the *total* fees the Plan paid PSI improperly includes fees that are not at issue (*e.g.*, employer-paid fees and transactional fees), and also includes the portion of PSI's fees that it would have been paid even if it had charged what Plaintiffs contend is a reasonable fee. This finding of fact should be revisited after the jury portion of trial to reflect the present value of the fees at issue as determined by the jury.

## PLAINTIFFS' PROPOSED CONCLUSIONS OF LAW

### I.     The Class Action.

17.    Plaintiffs, individually and as Class representatives, represent the following certified class: "All participants and beneficiaries of the Pentegra Defined Contribution Plan for Financial Institutions from September 15, 2014 through the date of judgment, excluding Defendants." Dkt. 191 at 11.

18.    Relevant here, Plaintiffs brought this action under 29 U.S.C. §§ 1132(a)(2) and (a)(3) "for appropriate relief under section 1109." Dkt. 92 ¶¶ 1–2; 29 U.S.C. §1132(a)(2); *see also* 29 U.S.C. § 1132(a)(3) (authorizing a "participant, beneficiary, or fiduciary" to "obtain other appropriate equitable relief").

19.    Section 1109 provides a broad range of remedies for breach of fiduciary duty, including "other equitable or remedial relief as the court may deem appropriate":

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such *other equitable or remedial relief as the court may deem appropriate, including the removal of such fiduciary*.

29 U.S.C. §1109(a) (emphasis added).

### II.    Equitable remedies sought.

20.    Plaintiffs seek the following equitable remedies: (1) surcharge in the form of disgorgement of all payments the Plan made to PSI that were prohibited under 29 U.S.C. § 1106;[3]

---

[3] Disgorgement of payments made to PSI in violation of § 1106(b) may be an appropriate remedy under § 1109(a). *See, e.g., Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1221–22 (2d Cir. 1987) (disgorging "fees…and other consideration [defendants] received in violation of Section 406"). *SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir.1997) is inapt because that case

(2) two RFPs conducted by a Court-appointed independent fiduciary for services provided by PSI (including Empower) for recordkeeping and administrative services, and ERISA § 3(16) [29 U.S.C. § 1002(16)] plan administrator services; (3) removal of the Plan's current fiduciaries (individual Board members and PSI) and appointment of new Board members by a Court-appointed independent fiduciary; and (4) barring PSI from providing future services to the Plan for a period of six (6) years.

**Defendants' Response:** No objection to the statement that Plaintiffs seek such relief, but the remedy of disgorgement provides for the return of ill-gotten profits, not "all payments." *See* 29 U.S.C. § 1109(a) ("Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable . . . to restore to such plan any *profits* of such fiduciary which have been made through use of assets of the plan by the fiduciary . . .") (emphasis added); *SEC v. Fischbach Corp.*, 133 F.3d 170, 175 (2d Cir.1997) ("As an exercise of its equity powers, the court may order wrongdoers to disgorge their fraudulently obtained *profits*.") (emphasis added).[4] Moreover,

_____

concerned disgorgement remedies for securities violations, and thus, does not address the remedy sought under ERISA and the common law of trusts. *See Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 250 (2000) (common law of trusts "offers a 'starting point for analysis [of ERISA] ... [unless] it is inconsistent with the language of the statute,  its structure, or its purposes'") (citation omitted).

[4] *Lowen* does not support disgorgement of *all* payments made to PSI.  *Lowen* involved a kickback scheme: as investment manager to the plan, defendants directed plan assets to companies for which they also served as investment banker *and* in which they had substantial ownership interests. *See Lowen v. Tower Asset Mgmt., Inc.*, 653 F. Supp. 1542, 1544-48 (S.D.N.Y.), *aff'd*, 829 F.2d 1209 (2d Cir. 1987).  Defendants received fees on both ends of these transactions from the plan *and* the investment targets, and also benefited from the scheme because the investments increased the value of their ownership interests in the target companies.  The fiduciaries thus provided no legitimate investment services, and instead just benefitted themselves through the kickback scheme.  That is why the Court ordered the defendants to disgorge not only the investment management fees, but also all "*profits*" and "consideration" defendants received from the twenty-six companies.  *See id.* at 1556.  While Plaintiffs challenge the amount of fees PSI should have

Plaintiffs' request for surcharge in the form of disgorgement should be limited to transactions that were prohibited under 29 U.S.C. § 1106(b)(2) in light of Plaintiffs' concession in fn. 1 that they are seeking no further equitable relief in connection with under 29 U.S.C. § 1106(a).

21.     The Court has broad discretion to award appropriate equitable relief. *Beck v. Levering,* 947 F.2d 639, 641 (2d Cir. 1991) (courts "are free to fashion other remedies" than those enumerated in § 1109 "tailored to the specific nature of employee benefit plans") (citation omitted). As described in further detail below, the Court finds that the requested equitable relief is appropriately tailored to the circumstances of this case. *See, e.g.,* 29 U.S.C. §§ 1109(a), 1132(a)(3); Dkt. 190 at 5 (noting the "removal of fiduciaries" and "an imposition of a surcharge on the fiduciaries" are traditional equitable remedies) (citing *Cunningham v. Cornell Univ.*, No. 16-6525-PKC, 2018 U.S. Dist. LEXIS 152972, at *5 (S.D.N.Y. Sep. 6, 2018)); *see also* RESTATEMENT (THIRD) OF TRUSTS § 95 (2012); *Tussey v. ABB, Inc.*, No. 06-04305, 2012 U.S. Dist. LEXIS 45240, at *113–14 (W.D. Mo. Mar. 31, 2012), *remanded on other grounds*, 746 F.3d 327 (8th Cir. 2014); *Reich v. Valley Nat'l Bank*, 837 F. Supp. 1259, 1286 (S.D.N.Y. 1993).

**Defendants' Response**:  The Court declines to award any of Plaintiffs' requested relief.

22.     The aim of ERISA is "to make the plaintiffs whole, but not to give them a windfall." *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 624 (2d Cir. 2006).

## III.   Fiduciary status.

23.     In addition to the named fiduciary identified in the plan document, 29 U.S.C. § 1102(a)(2), a party not named in the plan document becomes a fiduciary if it engages in certain specified conduct, *see* 29 U.S.C. § 1002(21)(A); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262

---

received, there is no dispute that PSI provided the Plan legitimate—and valuable—recordkeeeping and administrative services.  Disgorgement of all fees the Plan paid PSI is thus inappropriate.

10

(1993) ("ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan.").

24.      Under this functional definition, a person is a "fiduciary" to a plan to the extent:

(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "Person" includes corporate entities. 29 U.S.C. § 1002(9).

25.      "An entity need not have absolute discretion with respect to a benefit plan in order to be considered a fiduciary." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir. 1987). Upon a "factual showing," a person can be a fiduciary if "he was actively involved in the fiduciaries' decision making process, or exercised substantial control over the funds, or exerted such a degree of influence that it demonstrates 'effective discretionary authority.'" *Chao v. Merino*, No. 98-2041, 2002 U.S. Dist. LEXIS 26695, at *43–45 (E.D.N.Y. Mar. 29, 2002), *aff'd,* 452 F.3d 174 (2d Cir. 2006) (citing *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F. Supp. 869, 881–82 (S.D.N.Y. 1997), and *Pension Fund v. Silverman*, No. 93-8787, 1995 U.S. Dist. LEXIS 8663 (S.D.N.Y. June 26, 1995), and quoting *Reich v. Lancaster*, 55 F.3d 1034, 1048 (5th Cir. 1995)).

26.      While a person can be a fiduciary for the reasons set forth in 29 U.S.C. § 1002(21)(A), a person is only a fiduciary "to the extent" that he acts in such a capacity in relation to the plan. Thus, the threshold question in every case charging a breach of ERISA fiduciary duty is whether the defendant "was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to the complaint*."). *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000) (emphasis added).

11

27.     The Supreme Court has emphasized the limiting effect of the statutory phrase "to the extent" in § 1002(21)(A) because an ERISA fiduciary "may wear different hats." *Pegram*, 530 U.S. at 22). Accordingly, a person may be an ERISA fiduciary with respect to certain matters but not others. *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014).

28.     "Control" under § 1002(21)(A)(i) and (iii) "means the power to exercise a controlling influence over the management or policies of a person other than an individual." *Lowen v. Tower Asset Mgmt.*, 653 F. Supp. 1542, 1550 (S.D.N.Y. 1987), *aff'd*, 829 F.2d 1209 (2d Cir. 1987) (quoting 29 C.F.R. § 2510.3-21(e)(2)); *see also Rozo v. Principal Life Ins. Co.*, 949 F.3d 1071, 1074 (8th Cir. 2020) (quoting Black's Law Dictionary (11th ed. 2019) ("control" means "[t]o exercise power or influence over").

29.     "'Any' control over disposition of plan money makes the person who has the control a fiduciary." *IT Corp. v. Gen. Am. Life Ins. Co*., 107 F.3d 1415, 1421 (9th Cir. 1997). Deciding whether to pay particular expenses out of plan assets is a fiduciary act. DOL Adv. Op. 97-03A (Jan. 23, 1997).[5] Discretion is not a requirement to confer fiduciary status. *See* 29 U.S.C. § 1002(21)(A)(i).

**Defendants' Response:** Incomplete legal standard.

**Defendants' Suggested Insertion:** However, without accompanying discretion, the existence of control over the management or disposition of plan assets does not give rise to fiduciary status under ERISA. *Reich v. Lancaster*, 55 F.3d 1034, 1047 (5th Cir. 1995).

30.     The fiduciary definition must be "broadly construed[.]" *Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015)

---

[5] https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/advisory-opinions/1997-03a

(quoting *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997)). Although the Supreme Court has stated that "[a]t times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022), the statement was based on the premise that the fiduciary does not breach its duties. *See also Cunningham v. Cornell Univ.*, 86 F.4th 961, 983 (2d Cir. 2023)

## IV.    Prohibited Transactions.

31.    Disgorgement may be an equitable remedy for prohibited transactions under 29 U.S.C. § 1106. *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 253 (2000); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 260–64 (1993); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213, 1222 (2d Cir. 1987); 29 U.S.C. § 1109(a); *Brotherston v. Putnam Invs., LLC*, 907 F.3d 17, 42 (1st Cir. 2018); *Henry v. Champlain Enters.*, 288 F. Supp. 2d 202, 226–27 (N.D.N.Y. 2003) (citing *Mertens,* 508 U.S. at 260–64 and *Lowen*, 829 F.2d at 1213).

32.    Non-fiduciaries can be held liable for knowingly participating in a prohibited transaction. 29 U.S.C. § 1132(a)(3); *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 253 (2000) ("[A]n action for restitution against a transferee of tainted plan assets satisfies the 'appropriateness' criterion in § 502(a)(3)."); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) ("[P]arties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as the fiduciaries.") (citations omitted); *Reich v. Compton,* 57 F.3d 270, 285–87 (3d Cir. 1995); *Liss v. Smith*, 991 F. Supp. 278, 306 (S.D.N.Y. 1998).

33.    "Constructive knowledge" of the violation is sufficient. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 283 (2d Cir. 1992) ("A defendant who is on notice that conduct

violates a fiduciary duty is chargeable with constructive knowledge of the breach if a reasonably diligent investigation would have revealed the breach."); *id.* at 284 ("One participates in a fiduciary's breach if he or she affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables it to proceed."); *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d 103, 131 (S.D.N.Y. 2015) ("The knowledge element of this cause of action can be broken down into two elements, namely (1) knowledge of the primary violator's status as a fiduciary; and (2) knowledge that the primary's conduct contravenes a fiduciary duty.") (quoting *Gruby v. Brady*, 838 F. Supp. 820, 835 (S.D.N.Y. 1993))); *see id.* ("With respect to the second element, 'constructive knowledge suffices.'") (quoting *Diduck*, 974 F.2d at 283)).

34.     ERISA identifies certain transactions that are "*per se*" violations of ERISA. *Haley v. Teachers Ins. & Annuity Ass'n of Am.,* 377 F. Supp. 3d 250, 264 (S.D.N.Y. 2019); *Bugielski v. AT&T Servs.,* 76 F.4th 894, 901 (9th Cir. 2023); 29 U.S.C. § 1106. Section 1106(b) "codifie[s]" certain core tenets of the duty of loyalty "by prohibiting [a plan's fiduciary from engaging in] transactions tainted by a conflict of interest and thus highly susceptible to self-dealing," *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987), while § 1106(a) "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, [29 U.S.C. §1104(a)], by categorically barring certain transactions deemed likely to injure the pension plan[.]" *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241–42 (2000) (quotes omitted).

35.     The prohibitions of § 1106 must be read broadly, given "Congress' overriding concern with the protection of plan beneficiaries[.]" *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984); *see also Lowen v. Tower Asset Mgmt.,* 829 F.2d 1209, 1213 (2d Cir. 1987) (citing *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984) ("Protection of beneficiaries and notice to fiduciaries requires that Section 406(b) be broadly construed."). Good faith is not a defense to a prohibited

transaction. *Id.* at 124; *Gray v. Briggs*, 45 F. Supp. 2d 316, 330 (S.D.N.Y. 1999). The prohibitions of § 1106 apply "regardless of whether the transaction is 'fair' to the plan." *Reich v. Compton*, 57 F.3d 270, 288 (3d Cir. 1995) (Alito, J.).

**Defendants' Response:** Incorrect legal standard. In contrast to the Seventh Circuit in *Leigh v. Engle*, the Second Circuit has declined an "expansive interpretation of the various specific prohibitions of § 1106." *Donovan v. Bierwirth*, 680 F.2d 263, 270 (2d Cir. 1982). Moreover, *Reich v. Compton* addresses the prohibitions in §§ 1106(a)(1) and 1106(b)(2), *not* all the "prohibitions of § 1106."

**Defendants' Suggested Revision:** Delete.

### A.     29 U.S.C. § 1106(a) [ERISA § 406(a)]

36.     ERISA prohibits any transaction between a plan and a party in interest. In relevant part, § 1106(a) provides: "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect … (A) sale or exchange, or leasing, of any property between the plan and a party in interest…(C) furnishing of goods, services, or facilities between the plan and a party in interest [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]" 29 U.S.C. § 1106(a)(1)(A), (C)–(D).

**Defendants' Response:**  Incorrect legal standard.  Moreover, conclusions of law related to § 1106(a) are irrelevant in light of Plaintiffs' concession in footnote 1 that they are seeking no equitable relief in connection with a prohibited transaction under § 1106(a).  This and all other conclusions of law related to § 1106(a) therefore should be deleted.

37.     Section 1002(14) defines a party in interest to include those who are a fiduciary; any person providing services to the plan; or an employee, officer, or director of any person

15

providing services to the plan. 29 U.S.C. § 1002(14)(A)–(C), (H).

**Defendants' Response:** Conclusions of law related to § 1106(a) are irrelevant in light of Plaintiffs' concession in footnote 1 that they are seeking no equitable relief in connection with a prohibited transaction under § 1106(a). This and all other conclusions of law related to § 1106(a) therefore should be deleted.

**Defendants' Suggested Revision:** Delete.

38.    Any transaction between a plan and a party in interest is prohibited under § 1106(a) unless the transaction falls within one of the exemptions enumerated in § 1108. 29 U.S.C. §§ 1106, 1108; *see Cunningham v. Cornell Univ.*, 86 F.4th 961, 976 (2d Cir. 2023) ("[W]hen one cannot articulate what the statute seeks to prohibit without reference to the exception, then the exception should be understood as part of the definition of the prohibited conduct—and thus its inapplicability must be pled.").

**Defendants' Response:** Conclusions of law related to § 1106(a) are irrelevant in light of Plaintiffs' concession in footnote 1 that they are seeking no equitable relief in connection with a prohibited transaction under § 1106(a).  This and all other conclusions of law related to § 1106(a) therefore should be deleted.

39.    The only exemption that Defendants contend applies is set forth in § 1108(b)(2). *See* Dkt. 106 at 28. Under § 1108(b)(2), the prohibitions of § 1106(a) "shall not apply to ... (2) Contracting or making reasonable arrangements with a party in interest for ... services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2); *see also* 29 U.S.C. § 1108(c)(2) (exempting § 1106(a) transactions if the fiduciary receives only "reasonable compensation for services rendered").

**Defendants' Response:** Conclusions of law related to § 1106(a) are irrelevant in light of

Plaintiffs' concession in footnote 1 that they are seeking no equitable relief in connection with a prohibited transaction under § 1106(a).   This and all other conclusions of law related to § 1106(a) therefore should be deleted.

40.    Defendants have the burden of proving by a preponderance of the evidence that they qualify for the exemption. *Cunningham v. Cornell Univ.,* 86 F.4th 961, 975 (2d Cir. 2023) (citing *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987), and *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618–19 (2d Cir. 2006)). To satisfy the exemption, Defendants must establish that each service provided by PSI was (1) "necessary for the establishment or operation of the plan" and (2) "furnished under a contract or arrangement which is reasonable," and (3) "[n]o more than reasonable compensation is paid for such ... service." 29 C.F.R. § 2550.408b-2(a).

**Defendants' Response:** Conclusions of law related to § 1106(a) in light of Plaintiffs' concession in footnote 1 that they are seeking no equitable relief in connection with a prohibited transaction under § 1106(a).   This and all other conclusions of law related to § 1106(a) therefore should be deleted.

41.    However, before the burden shifts to Defendants to prove a self-dealing transaction's fairness under an exemption, it falls on the "beneficiaries [to] establish[ ] their prima facie case by demonstrating the trustees' breach of fiduciary duty." *Cunningham v. Cornell Univ.*, 86 F.4th 961, 977–78 (2d Cir. 2023).

**Defendants' Response:** Conclusions of law related to § 1106(a) are irrelevant in light of Plaintiffs' concession in footnote 1 that they are seeking no equitable relief in connection with a prohibited transaction under § 1106(a).   This and all other conclusions of law related to § 1106(a) therefore should be deleted.

17

42.     If Plaintiffs establish their prima facie case by demonstrating that Defendants breached their fiduciary duty, and if Defendants fail to prove that PSI's compensation was reasonable, the Plan will be "'entitled to recover' any excess above a reasonable fee." Dkt. 149 at 17 (quoting *N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179, 183 (2d Cir. 1994) and citing 29 U.S.C. § 1108(b)(2)(A)).

**Defendants' Response:** Conclusions of law related to § 1106(a) are irrelevant in light of Plaintiffs' concession in footnote 1 that they are seeking no equitable relief in connection with a prohibited transaction under § 1106(a).   This and all other conclusions of law related to § 1106(a) therefore should be deleted.

### B.    29 U.S.C. § 1106(b) [ERISA § 406(b)]

43.     Section 1106(b) [ERISA § 406(b)] prohibits fiduciary self-dealing with plan assets. 29 U.S.C. § 1106(b)(1)–(3). It provides that: "A fiduciary with respect to a plan shall not (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan, or (3) receive any consideration for his personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." *Id*.

44.     "Section 406(b) prohibits a plan fiduciary from engaging in various forms of self-dealing. Its purpose is to "prevent[] a fiduciary from being put in a position where he has dual loyalties and, therefore, he cannot act exclusively for the benefit of a plan's participants and beneficiaries." *Reich v. Compton*, 57 F.3d 270, 287 (3d Cir. 1995) (Alito, J.) (quoting H.R. Conf.

18

Rep. No. 93-1280 (Aug. 12, 1974)); 29 C.F.R. § 2550.408b-2(e)(1) (ERISA § 406(b) "relat[es] to acts involving conflicts of interest by fiduciaries.").

45.     ERISA allows a fiduciary to wear two hats, but requires such a fiduciary to "wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000).

46.     Section 1106(b) "needs to be broadly construed and . . . liability may be imposed even where there is no taint of scandal, hint of self-dealing, no trace of bad faith[.]" *Reich v. Compton*, 57 F.3d 270, 288 (3d Cir. 1995) (Alito, J.) (quoting *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (quotation marks omitted)). The *per se* prohibition of § 1106(b) is "consistent with the remedial purpose of ERISA, for 'at the heart of the fiduciary relationship is the duty of complete and undivided loyalty to the beneficiaries of the trust[.]'" *Id.* (quoting *Donovan v. Mazzola*, 716 F.2d 1226, 1238 (9th Cir. 1983)); 29 C.F.R. § 2550.408b-2(e)(1).

47.     As further described in regulations promulgated by the Secretary of Labor, the prohibitions of § 1106(b) "are imposed upon fiduciaries to deter them from exercising the authority, control, or responsibility which makes such persons fiduciaries when they have interests which may conflict with the interests of the plans for which they act. In such cases, the fiduciaries have interests in the transactions which may affect the exercise of their best judgment as fiduciaries." 29 C.F.R. § 2550.408b-2(e)(1); *see also Freund v. Marshall & Ilsley Bank*, 485 F. Supp. 629, 637–38 (W.D. Wis. 1979).

48.     Thus, a fiduciary is prohibited from using his "authority, control, or responsibility . . . to cause a plan to pay an additional fee to such fiduciary (or to a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment as a fiduciary) to provide a service." 29 C.F.R. § 2550.408b-2(e)(1). Nor may a fiduciary "cause a plan to enter into

19

a transaction involving plan assets whereby such fiduciary (or a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgement as a fiduciary) will receive consideration from a third party in connection with such transaction." *Id*.

49.     Moreover, a fiduciary does not engage in a transaction prohibited by § 1106(b)(1) "if the fiduciary *does not use any of the authority, control or responsibility which makes such person a fiduciary* to cause a plan to pay additional fees for a service furnished by such fiduciary or to pay a fee for a service furnished by a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment as a fiduciary." 29 C.F.R. § 2550.408b-2(e)(2) (emphasis added).

50.     Courts within the Second Circuit have found that there are no exemptions to the *per se* prohibitions of § 1106(b). *Cunningham v. Cornell Univ.,* 86 F.4th 961, 977 (2d Cir. 2023) (§ 1106(b) does not "directly incorporate § 1108 exemptions"); *see also La Scala v. Scrufari*, 96 F. Supp. 2d 233, 238–39 (W.D.N.Y. 2000) (§§ 1108(b)(2) and (c)(2) do not provide a "safe harbor" for § 1106(b)(1) violations); *Whitfield v. Tomasso*, 682 F. Supp. 1287, 1304 (E.D.N.Y. 1988) ("exemptive provisions of sections 408(b)(2) and 408(c)(2) apply only to violations of section 406(a)"); *Herman v. Solidarity of Labor Orgs. Health & Welfare Fund*, No. 95-7247-KMW (RLE), 1999 U.S. Dist. LEXIS 8780, at *11 (S.D.N.Y. June 9, 1999) ("§ 408(b)(2) exemption does not apply to self-dealing"); *see also Acosta v. City Nat'l Corp.*, 922 F.3d 880, 886 (9th Cir. 2019) (citing *Barboza v. Cal. Ass'n of Prof. Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015), and *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910–11 (9th Cir. 2001)); *Nat'l Sec. Sys. v. Iola,* 700 F. 3d 65, 94 (3d Cir. 2012); 29 C.F.R. § 2550.408b-2(a)(1) ("Section 408(b)(2) does not contain an exemption from acts described in section 406(b)(1) of the Act . . . or section 406(b)(2) of the Act…or section 406(b)(3) of the Act. . . . Such acts are separate transactions not described in section 408(b)(2)."); *but see Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987) ("a

fiduciary charged with a violation of Section 406(b)(3) either must prove by a preponderance of the evidence that the transaction in question fell within an exemption, or must prove by clear or convincing evidence that compensation it received was for services other than a transaction involving the assets of a plan.") (citation omitted). The Second Circuit in *Lowen* ultimately found that no exemptions were applicable to the § 1106(b) violations. *Id.* at 1216–17.

**Defendants' Response:** Misstatement of law. *Cunningham*'s discussion of whether § 1106(b) "directly incorporate[s] § 1108 exemptions" deals with whether plaintiffs raising a claim under § 1106(b) must plead around § 1108 exemptions. Moreover, the Second Circuit has held that a "fiduciary charged with a violation of Section 406(b)(3) [can] prove by a preponderance of the evidence that the transaction in question fell within an exemption [in § 1108]." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987).

**Defendants' Suggested Revision:** The prohibited transactions under § 1106(b) are subject to the exemptions provided in § 1108. *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987).

51.    A fiduciary found liable for violating 29 U.S.C. § 1106(b) is subject to disgorgement of amounts unlawfully paid by the Plan. *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213, 1222 (2d Cir. 1987) (disgorgement of fees and commissions defendants received in violation of § 1106(b)); *Soft Drink, Brewery Workers & Delivery Emples., Indus. Emples., Warehousemen, Helpers, & Misc. Workers, Greater N.Y. & Vicinity, Local Union No. 812 v. Ulrich*, No. 17-137-KMK, 2022 U.S. Dist. LEXIS 156483, at *26–27 (S.D.N.Y. Aug. 30, 2022) (disgorgement of fees paid for violations of § 1106(b)); *Iron Workers Dist. Council v. J & H Reinforcing & Structural Erectors, Inc.*, No. 18-00017, 2018 U.S. Dist. LEXIS 33180, at *16–20 (S.D. Ohio Feb. 28, 2018) ("directing disgorgement of all ill-gotten gains" for violations of 29 U.S.C. §§ 1104(a)(1) and 1106(b)(1) and (2)); 29 U.S.C. § 1109(a); 29 U.S.C. § 1132(a)(3).

21

**Defendants' Response**: Disgorging any fees paid to PSI for services provided to the Plan above and beyond the damages awarded by the jury represents an impermissible windfall because it would result in the Plan having received necessary recordkeeping and administrative services for free. Discussion of disgorgement and related lost investment opportunity is thus inappropriate.

**Defendants' Suggested Revision:** Delete.

52.     The "loss associated with a prohibited transaction is at least 'the entire cost of the prohibited transaction." *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 887 (9th Cir. 2019) (quoting *Kim v. Fujikawa*, 871 F.2d 1427, 1431 (9th Cir. 1989)). When a fiduciary engages in self-dealing, "the 'entire cost' of the transaction is the total amount of the illegal compensation that the fiduciary paid itself." *Acosta*, 922 F.3d at 887. Even if Defendants were entitled to an offset for their *§ 1106(a)* violations based on a benefit conferred on the Plan, they must make that showing. *See Kim*, 871 F.2d at 1431 (ordering "entire cost of the prohibited transaction, less reimbursements made by the Union" because defendants failed to meet their burden).

**Defendants' Response**: *Kim* does not support that defendants must make a showing to offset § 1106(a) violations. *See Kim v. Fujikawa*, 871 F.2d 1427, 1430-31 (9th Cir. 1989). In *Kim*, union employees were being paid out of plan assets for *both* union activities *and* work done on behalf of the fund. The court found that plan asset payment to union employees for union activities was a violation of § 1106(a). While the defendants understood they would have to pay the fees for inappropriate plan asset payment for union work, they attempted to carve out from the remedy work done by union employees for the fund. However, based on inadequate employee records, the court was unable to distinguish which work was done for the union versus the fund, and thus ordered the defendants to pay the full amount. Here, there is no dispute that PSI was being paid for services to the Plan. Instead, the issue is how much the Plan *should* have paid PSI for services

22

provided to the Plan, and any remedy will consist of the actual fees paid to PSI less the reasonable amount PSI should have been paid.

**Defendants' Suggested Revision:** Delete.

### C.  Lost investment opportunity on Plan losses

53.  Plan participants "lose not only the money spent on [unlawful] fees, but also 'lost investment opportunity;' that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1198 (9th Cir. 2016) (en banc). Accordingly, an award of the Plan's losses must take into account what the Plan would have earned from the investment of Plan assets unlawfully distributed from the Plan. *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985); *see also Browe v. CTC Corp.*, 15 F.4th 175, 199 (2d Cir. 2021) (holding that breaching fiduciaries must "restore all losses, including unrealized gains resulting from the breach" and ordering district court to recalculate damages "to capture losses through the date of judgment").

**Defendants' Response:** Disgorging any fees paid to PSI for services provided to the Plan above and beyond the damages awarded by the jury represents an impermissible windfall because it would result in the Plan having received necessary recordkeeping and administrative services for free. Discussion of disgorgement and related lost investment opportunity is thus inappropriate.

**Defendants' Suggested Revision:** Delete.

54.  The Plan should be restored to the position it would have been in had there been no breach. *Donovan v. Bierwirth*, 754 F.2d 1049, 1056 (2d Cir. 1985). "A trustee who breaches his or her duty could be liable for loss of value to the trust or for any profits that the trust would have accrued in the absence of the breach." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012) (citing RESTATEMENT (THIRD) TRUSTS § 100(a) AND RESTATEMENT (SECOND)

23

TRUSTS § 205).

55.     "[T]he measure of damages from Defendants' breach "need not be exact—'it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.'" *Martin v. Feilen*, 965 F.2d 660, 672 (8th Cir. 1992) (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)); *see also Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 285 (2d Cir. 1992).

**Defendants' Response:** Caselaw relating to the measurement of damages, which is a question to be found by the jury, is immaterial to equitable relief.

**Defendants' Suggested Revision**: Delete.

**D.      Remedies awarded to Plaintiffs from Defendants' prohibited conduct in violation of 29 U.S.C. § 1106.**

**1.      29 U.S.C. § 1106(a) [ERISA § 406(a)]**

56.     The Court concludes that Plaintiffs have proven by a preponderance of the evidence that **[insert Defendants found by jury to be fiduciaries]**committed prohibited transactions under 29 U.S.C. § 1106(a)(1)(A), (C), and (D).

57.     The Court accepts the jury's findings that **[insert Defendants found by jury to be fiduciaries]** were fiduciaries to the Plan with respect to the retention of PSI and the compensation it received for services rendered to the Plan. 29 U.S.C. § 1102(a)(1); 29 U.S.C. § 1002(21)(A); *Lowen v. Tower Asset Mgmt.*, 653 F. Supp. 1542, 1550 (S.D.N.Y. 1987), *aff'd,* 829 F.2d 1209 (2d Cir. 1987).

58.     The Court finds that PSI was a party in interest under 29 U.S.C. § 1002(14). PSI was a fiduciary to the Plan and an entity providing services to the Plan. 29 U.S.C. § 1002(14)(A), (B). PSI was a party in interest when the Services Agreements were renewed in 2013 and 2018.

59.     The Court finds that the fees paid to PSI for services were paid from Plan assets,

24

and those assets were transferred to PSI. (J)TX960 ¶ 28; 29 U.S.C. § 1002(42); *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 105 (2d Cir. 2011) (deferring to the Department of Labor's guidance that "plan assets should be identified based on 'ordinary notions of property rights'") (quoting DOL Adv. Op. 93-14A (May 5, 1993)); *see also* DOL Adv. Op. 92-24A (plan assets include those held in a "separate account with a bank or other third party in the name of the plan").[6] Although Defendants contend that certain amounts were paid by participating employers, those amounts were not paid directly to PSI but were first placed in a trust account for the benefit of the Plan and then paid to PSI.

**Defendants' Response:** Factually incorrect. As noted above in response to Paragraph 2, a portion of PSI's fees were paid by participating employers, who could elect to pay PSI directly rather than out of Plan assets.

**Defendants' Suggested Revision:** The Court finds that the fees paid to PSI for services were paid in part from Plan assets, and those assets were transferred to PSI. 29 U.S.C. § 1002(42); *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 105 (2d Cir. 2011) (deferring to the Department of Labor's guidance that "plan assets should be identified based on 'ordinary notions of property rights'") (quoting DOL Adv. Op. 93-14A (May 5, 1993)); *see also* DOL Adv. Op. 92-24A (plan assets include those held in a "separate account with a bank or other third party in the name of the plan").

60.    The Court finds that **[insert Defendants found by jury to be fiduciaries]** jointly caused the Plan to retain PSI as a service provider, and to pay Plan assets to PSI. Defendants therefore caused the Plan to engage in a transaction that they knew or should have known

---

[6] https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/resource-center/advisory-opinions/1992-24a.

constituted: (1) an exchange of property between the Plan and a party in interest (PSI) in violation of 29 U.S.C. § 1106(a)(1)(A); (2) the furnishing of services between the Plan and a party in interest (PSI) in violation of 29 U.S.C. § 1106(a)(1)(C); and (3) a transfer of Plan assets to a party in interest (PSI) in violation of 29 U.S.C. § 1106(a)(1)(D).

61.     The jury found that Plaintiffs proved by a preponderance of the evidence that **[insert Defendants found by jury to be fiduciaries]** breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B) and caused a loss to the Plan. In awarding damages, the jury found that Defendants failed to meet their burden to disprove the amount of damages presented by Plaintiffs.

**Defendants' Response:** Defendants disagree that they have a burden to disprove amount of losses presented by Plaintiffs. In any event, the burden that shifts to Defendants is to disprove the amount of damages, not losses.

**Defendants' Suggested Revision:** Delete final sentence.

62.     Accepting the jury's findings, the Court finds that Defendants failed to meet their burden to prove that PSI received only reasonable compensation to exempt the § 1106(a) transactions under § 1108(b)(2). *Cunningham v. Cornell Univ.,* 86 F.4th 961, 975 (2d Cir. 2023) (citing *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987), and *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618–19 (2d Cir. 2006)).

63.     Because Defendants have failed to prove that PSI's compensation is reasonable, the Plan is entitled to recover the difference between what the Plan paid and a reasonable fee. *N.Y. State Teamsters Council Health & Hosp. Fund v. Estate of DePerno*, 18 F.3d 179, 183 (2d Cir. 1994). However, the jury awarded damages based on the difference between what the Plan paid to PSI and a reasonable fee. The Court finds that the jury's award for Plaintiffs' § 1104(a) claims serves as an offset to the Court's award for Plaintiffs' claims under § 1106(a).

## 2.    29 U.S.C. § 1106(b) [ERISA § 406(b)]

64.    The Court concludes that Plaintiffs have proven by a preponderance of the evidence that **[insert Defendants found by jury to be fiduciaries]** committed prohibited transactions under 29 U.S.C. § 1106(b)(1)–(3).

65.    As fiduciaries to the Plan, the Court finds that **[insert Defendants found by jury to be fiduciaries]** jointly caused the Plan to retain PSI as a service provider, and to pay Plan assets to PSI. As to PSI and Pinto specifically, these defendants caused a "self-dealing" transaction between the Plan and a fiduciary.

66.    Through their conduct, the Court finds that PSI and Pinto dealt with the assets of the Plan in their own interest or for their own account, in violation of 29 U.S.C. § 1106(b)(1). They also acted in a transaction involving the Plan on behalf of a party (PSI and Pinto) whose interests were adverse to Plan participants' interests, in violation of 29 U.S.C. § 1106(b)(2). Additionally, they received consideration for their own personal account through payments from the Plan from parties dealing with the Plan in connection with transactions involving the assets of the Plan, in violation of 29 U.S.C. § 1106(b)(3).

**Defendants' Response:** Plaintiffs have identified no facts establishing that Mr. Pinto received consideration in the form of Plan assets to his personal account.

**Defendants' Suggested Revision:** Delete reference to "Pinto" and change "they" and "theirs" to "it."

67.    In support of the § 1106(b) violations, the Court finds that PSI and Pinto stood to personally gain from causing the Plan to use PSI as the Plan's exclusive service provider and to pay it unreasonable fees for the services it rendered. PSI used the Plan and the profits it received for Plan services to maintain a viable retirement plan business and advance its other business

27

objectives, as well as incentives provided to PSI's officers. The Plan was critical to the financial success of PSI.

**Defendants' Response:** As noted above in response to Paragraph 1, PSI was not the Plan's exclusive service provider. Also as noted above in response to Paragraph 4, PSI was not dependent on the Plan for its financial success, as the percentage of PSI's revenue derived from the Plan was steadily decreasing. Moreover, Plaintiffs have identified no facts establishing that Mr. Pinto received consideration in the form of Plan assets to his personal account.

**Defendants' Suggested Revision:** Delete.

68.    Unlike violations under 29 U.S.C. § 1106(a), there are no exemptions to the *per se* prohibited transactions of § 406(b). *Cunningham v. Cornell Univ.,* 86 F.4th 961, 977 (2d Cir. 2023); *LaScala v. Scrufari*, 96 F. Supp. 2d 233, 238–39 (W.D.N.Y. 2000); *Whitfield v. Tomasso*, 682 F. Supp. 1287, 1304 (E.D.N.Y. 1988); *Herman v. Solidarity of Labor Orgs. Health & Welfare Fund*, No. 95-7247-KMW, 1999 U.S. Dist. LEXIS 8780, at *11 (S.D.N.Y. June 9, 1999); *see supra* ¶ 40.

**Defendants' Response:** Incorrect statement of law.

**Defendants' Suggested Revision:** The prohibited transactions under § 1106(b) are subject to the exemptions provided in § 1108. *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1215 (2d Cir. 1987).

69.    Defendants have failed to demonstrate that any amount PSI received was lawfully paid from the Plan. Therefore, the Plan's losses from their breach are $157,033,846 from October 1, 2014, through February 16, 2024. This represents all amounts paid to PSI for services provided to the Plan.

**Defendants' Response:** Disgorging all amounts paid to PSI for services provided to the Plan represents an impermissible windfall because it would result in the Plan having received necessary recordkeeping and administrative services for free.

**Defendants' Suggested Revision:** The Court will not order PSI to disgorge all of the fees the Plan paid to it for the services PSI provided the Plan. Doing so would mean that the Plan had received necessary services for years for free.

The jury has already awarded damages in the amount of **[$ insert]**, which represents the present value of the difference between what the Plan paid PSI and what it should have paid PSI. Ordering PSI to disgorge the remainder of the fees it received from the Plan would not return the Plan to the place it would have been had it been charged a reasonable fee; it would result in an impermissible windfall, as the Plan would have received valuable and necessary services for free. *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 624 (2d Cir. 2006) (ERISA's aim is "to make the plaintiffs whole, but not to give them a windfall").

70.     The Court finds that the S&P 500 index is an appropriate proxy for how funds invested in the Plan would have performed. *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 1113291, at \*36 (W.D. Mo. Mar. 31, 2012), *aff'd*, 746 F.3d 327, 337 (8th Cir. 2014) (reversed on other grounds). Accounting for the Plan's lost investment opportunity using the S&P 500 index through February 16, 2024, the Plan's total losses caused by PSI's unlawful receipt of Plan assets are $157,033,846.

**Defendants' Response:** Because disgorgement of all PSI's fees would result in an impermissible windfall, there is no need for the Court to consider how to consider how the disgorged fees would have been invested. Moreover, in the event the jury has awarded damages for any breach of fiduciary duties, it will already have determined what rate to use as "an

appropriate proxy for how funds invested in the Plan would have performed." It would be inconsistent for the Court to select a different rate.

**Defendants' Suggested Revision:** Delete. Alternatively, replace "S&P 500 index" with the "rate applied by the jury in awarding damages for Defendants' breaches of fiduciary duty."

71. Because the jury awarded **[$ insert]** to Plaintiffs for Defendants' §1104(a)(1)(B) violations based on the difference between the fee the Plan paid to PSI for services and a reasonable fee, the Court will reduce the total amount of disgorgement by that award. The total amount to be disgorged is therefore **[$ insert]**.

**Defendants' Response:** Ordering disgorgement of all PSI's fees would result in an impermissible windfall.

**Defendant's Suggested Revision:** Delete.

## V.   Competitive bidding process.

72. The district court may order breaching plan fiduciaries to utilize a competitive bidding process to select a new service provider. *Tussey v. ABB, Inc*., No. 06-04305, 2012 U.S. Dist. LEXIS 45240, at *113–14 (W.D. Mo. Mar. 31, 2012), *remanded on other grounds*, *Tussey v. ABB, Inc*., 746 F.3d 327 (8th Cir. 2014) (ordering an RFP to be conducted "within 18 months"). In *Tussey,* the district court awarded this equitable relief after finding that the ABB fiduciaries breached their duties and committed prohibited transactions by allowing the plan to overpay for administrative services in order to subsidize the cost of their corporate plans. *Id.* at *24–47, 82–89, 103–108, 113–114.

73. The Court orders that the Board complete two separate RFPs within six (6) months of this Order, in order to hire a service provider(s) for all services provided by PSI (including Empower), which include recordkeeping and administrative services, as well as ERISA § 3(16)

plan administrator services. The Plan's incumbent recordkeeper, Empower, may participate in the RFPs for the provision of recordkeeping services. However, PSI is barred from participating in either RFP.

**Defendants' Response:** Lay and expert testimony will demonstrate that RFPs are not always required for fulfillment of fiduciary duties. Two separate RFPs within six months is unnecessary and wasteful. Moreover, it does not benefit the Plan to exclude PSI from competitive bidding insofar as PSI might offer the lowest fee or superior services. The exclusion of PSI might thus cause the Plan to pay unnecessarily high fees or accept subpar services, thus defeating the purpose of competitive bidding. This conclusion of law is also factually incorrect insofar as it suggests Empower provides recordkeeping and administrative services to the Plan. Empower provides the Plan recordkeeping services only.

**Defendants' Suggested Revision:** The Court finds that RFPs are not necessarily required for the fulfillment of fiduciary duties. The Court finds that Defendants' breaches were not so egregious as to require the Court to dictate how fiduciary duties should be fulfilled.

74.    Upon the recommendation of Class Counsel, the Court will appoint an independent fiduciary to conduct the RFPs. Responses to each RFP shall be received from at least three qualified vendors chosen by the independent fiduciary.

**Defendants' Response**: As above, the evidence does not warrant ongoing oversight of fiduciaries, and two separate RFPs within six months is unnecessary and wasteful. Also, it is outside any party's control how many qualified vendors respond to an RFP, particularly if (as Plaintiffs suggest) the incumbent vendor is excluded from bidding. Moreover, an RFP is costly and unnecessary without first determining whether there are any vendors willing and able to

31

provide the Plan with the necessary services currently provided by PSI for a fee no greater than determined by the jury to be reasonable.

**Defendants' Suggested Revision:** Delete.

75.    The independent fiduciary shall have the final authority to select the service provider(s). A single vendor may provide all requested services to the Plan if such decision is made "solely in the interest" of Plan participants and beneficiaries and otherwise complies with 29 U.S.C. § 1104. The expense of conducting the RFPs, engaging the independent fiduciary, and transitioning to a new service provider(s) shall be borne by the Board and PSI, including any early contract termination fees with an incumbent provider.

**Defendants' Response:** As above, the evidence does not warrant ongoing oversight of fiduciaries, and two separate RFPs within six months is unnecessary and wasteful. According to Plaintiffs, a prudent fiduciary would have conducted several RFPs during the period at issue in this lawsuit, and the associated costs would have been borne by the Plan, as would any termination fees resulting from a change in service provider. Ordering PSI to pay these costs thus results in an impermissible windfall, as the Plan would be receiving services that, according to Plaintiffs, it would have paid for if its fiduciary had fulfilled its duties. Moreover, the Board has no assets separate from the assets of the Plan,

**Defendants' Suggested Revision:** Delete.

76.    The Court finds that this equitable relief is appropriate under the circumstances of the case. Based on the evidence presented during the jury trial, the Board has never engaged in a competitive bidding process, including through an RFP, for recordkeeping and administrative services or for ERISA § 3(16) plan administrator services. Expert witnesses testified during the jury trial that conducting an RFP for the provision of administrative services is an industry standard

practice among prudent plan fiduciaries. Prudent plan fiduciaries conduct an RFP every three to five years because this is the most effective method to ensure the fees paid to service providers are and remain reasonable for the services rendered. *See Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1101 (D. Colo. 2020) (noting such evidence); *see also Reasonable Contract or Arrangement Under Section 408(b)(2)—Fee Disclosure*, 75 FR 41600, 41625 (July 16, 2010) (Department of Labor has recognized since 2010, "plans normally conduct requests for proposal (RFPs) from service providers at least once every three to five years.").

**Defendants' Response:** As above, the evidence does not warrant ongoing oversight of fiduciaries. There is no requirement under ERISA that fiduciary conduct an RFP at all, let alone every three to five years. Regular RFPs are potentially wasteful if the fiduciary satisfies itself through other means that the fees it is paying plan service providers are reasonable in light of the quality of the services provided.

**Defendants' Suggested Revision**: Delete.

77.     The Board's failure to engage in a prudent process to negotiate, monitor, and ultimately assess the reasonableness of the fees paid by the Plan to PSI resulted in the Plan significantly overpaying for administrative services. The millions of dollars in excess fees paid to PSI over the class period, for the financial benefit of PSI, detrimentally impacted Plan participants' retirement savings.

**Defendants' Response:** This statement repeats the finding of fact, if any, made by the jury, and is therefore unnecessary to any finding made by the Court in support of Plaintiff's requested equitable relief.

**Defendants' Suggested Revision**: Delete.

78.     The Court notes that PSI recently subcontracted certain administrative services to

a third party, Empower. However, transitioning those services to Empower did not occur following an RFP process among competing vendors. Rather, the transition was made to further PSI's retirement business at large. Given the egregious conduct that occurred by the Plan's fiduciaries during the class period, the Court is not inclined to blindly accept that the process leading to the selection of Empower complied with recognized industry standards of prudence. *See* 29 U.S.C. § 1104(a)(1)(B). For that reason, the Court orders that two separate RFPs be conducted by the Board.

**Defendants' Response:** Even if jury finds that Defendants breached their duties, there is insufficient evidence to conclude that any Defendants' conduct was egregious. In addition, for the reasons stated above, two separate RFPs in six months is excessive and unnecessary. Moreover, Empower's contract to provide recordkeeping services is with PSI. If PSI is barred from providing services to the Plan, Empower would have no contractual relationship with the Plan, and would need to separately contract with Plan to continue providing recordkeeping services. This comment is thus immaterial.

**Defendants' Suggested Revision:** Delete.

## VI.    Removal of the current individual Board members and PSI as fiduciaries.

79.    Section 1109(a) expressly authorizes the removal of a fiduciary for breach of fiduciary duty. 29 U.S.C. § 1109(a) (equitable relief includes "removal" of the breaching fiduciary); *see also Beck v. Levering,* 947 F.2d 639, 641 (2d Cir. 1991) (affirming the removal of fiduciaries who engaged in "egregious self-dealing"); *Martin v. Feilen*, 965 F.2d 660, 672–73 (8th Cir. 1992) (affirming permanent injunction against fiduciaries who "repeatedly used their fiduciary control over the [plan's] assets to profit from self dealing"). Self-dealing is not required to remove a fiduciary. *Chao v. Merino*, 452 F.3d 174, 185–86 (2d Cir. 2006).

80.     The Court orders that the current individual Board members and PSI are barred from serving as fiduciaries to the Plan. The current Board members shall be removed within six (6) months of this Order.

**Defendants' Response:** Under governing Plan documents, Board members must be executives of participating employers, who will likely be reluctant to serve as a fiduciary in the wake of this lawsuit. Removing current Board members *before* having secured their replacements threatens the stability of the Plan, as during that interim it would lack any fiduciary oversight. More fundamentally, even if the jury finds a breach, there is insufficient evidence to support a finding that the conduct of Plan fiduciaries was so egregious as to warrant this relief.

81.     **Defendants' Suggested Revision:** The Court finds that the conduct of Plan fiduciaries was not so egregious as to require their removal. This is evident by the fact that they took measures to ensure the Plan was paying reasonable fees, as shown by their engagement of consultants to provide benchmarking analyses of the Plan's fees before renewing PSI's engagement in 2013 and 2018, and the engagement of independent counsel to represent the Board in its negotiation with PSI in 2013.

82.     Barring PSI from serving as a fiduciary to the Plan shall extend to any PSI employee, officer, or director even if such individual serves as a non-voting member on the Board. In addition, no Board member shall also serve on the PSI Board or the Board for the Pentegra Defined Benefit Plan for Financial Institutions.

**Defendants' Response:** In light of Defendants' suggested conclusion that Plan fiduciaries' conduct was not so egregious as to warrant removal, this conclusion is unnecessary.

**Defendants' Suggested Revision**: Delete.

83.     Upon the recommendation of Class Counsel, the Court shall appoint an independent

35

fiduciary to select the individuals to serve on the Board. The reasonable expenses associated with hiring an independent fiduciary shall be borne by the Board and PSI.

**Response:** In light of Defendants' suggested conclusion that Plan fiduciaries' conduct was not so egregious as to warrant removal, this conclusion is unnecessary.

**Defendants' Suggested Revision**: Delete.

84.    The Court finds that the egregious, self-dealing conduct of Defendants warrants such equitable relief. During the jury trial, the Court heard compelling evidence of serious misconduct by the Board, including the individual Board members, and by PSI. Rather than acting "solely in the interests of participants and beneficiaries," 29 U.S.C. § 1104(a), the Board and PSI continuously took action adverse to the Plan to ensure the financial success and viability of PSI. The Board was fully informed of PSI's uncompetitive services and unreasonable fees charged for administrative services. However, the Board failed to take prudent action to remove PSI as a service provider and obtain reasonable fees for Plan services from a qualified and experienced provider.

**Defendants' Response:** In light of Defendants' suggested conclusion that Plan fiduciaries' conduct was not so egregious as to warrant removal, this conclusion is unnecessary.

**Defendants' Suggested Revision**: Delete.

85.    The fiduciary governance structure over the administration of the Plan was unquestionably conflicted. Officers and executives of PSI (Pinto and Wietsma) served as Board members, and these members along with McGoldrick served on the PSI Board. PSI exercised controlling influence over the Board's decisions to ensure the Plan remained a valuable client of PSI. The conflicted relationship between the Board (and its individual Board members) and PSI must be severed to prevent future wrongdoing to the Plan.

**Defendants' Response:** In light of Defendants' suggested conclusion that Plan fiduciaries' conduct was not so egregious as to warrant removal, this conclusion is unnecessary.

**Defendants' Suggested Revision**: Delete.

**VII.   Barring PSI from providing future services to the Plan.**

86.     Equitable relief is available to the district court to bar a service provider from providing future services to an ERISA-governed plan. *See Martin v. Feilen*, 965 F.2d 660, 672–73 (8th Cir. 1992) (enjoining a professional service provider from acting as a service provider to ERISA plans); *Whitfield v. Tomasso*, 682 F. Supp. 1287, 1306 (E.D.N.Y. 1988) (same); *cf. Tussey v. ABB, Inc.*, No. 06-04305, 2012 U.S. Dist. LEXIS 45240, at *113–14 (W.D. Mo. Mar. 31, 2012), *remanded on other grounds*, *Tussey v. ABB, Inc.*, 746 F.3d 327 (8th Cir. 2014) (ordering that the ABB fiduciaries could not utilize the same recordkeeper for the 401(k) plan and the corporate plans because the 401(k) plan subsidized the costs of the 401(k) plan).

87.     Other forms of equitable relief include prohibiting a service provider from "collecting fees for its services." *Reich v. Valley Nat'l Bank*, 837 F. Supp. 1259, 1286 (S.D.N.Y. 1993) (citing 29 U.S.C. §§ 1109, 1132, and *Ironworkers Local No. 272*, 695 F.2d 531, 535–36 (11th Cir. 1983)).

88.     The Court orders that PSI is barred from serving as a Plan service provider for a period of six (6) years. Within six (6) months of this Order, PSI shall no longer service the Plan. During the transition period from PSI to a new service provider, PSI shall receive no compensation paid from Plan assets.

**Defendants' Response:** As above, the evidence does not warrant ongoing oversight of this Plan. Barring PSI from providing services to the Plan may lead the Plan to pay unnecessarily high fees for the reasons set forth above. Moreover, providing that PSI shall receive no compensation

from Plan assets during the transition to a new service provider would result in a windfall, as the Plan would in effect be receiving valuable and necessary services for free. Further, there is insufficient evidence that such relief is warranted.

**Defendants' Suggested Revision:** The Court declines to enter Plaintiffs' requested relief regarding PSI's future service to the Plan.

89.    The Court finds that such equitable relief is appropriately tailored to the needs of the case. During the jury trial, the Court heard compelling evidence of PSI's serious misconduct. Given PSI's control and influence over the Board's decisions regarding its compensation and retention as a primary service provider to the Plan, PSI will be prohibited from servicing the Plan for the next six (6) years. The Court also heard compelling evidence that PSI lacked sufficient scale and operational capacity to provide cost-effective services to the Plan.

**Defendants' Response:** PSI's conduct in servicing the Plan was not so egregious as to warrant barring PSI from servicing the Plan. In addition, for the reasons stated above, barring PSI from providing services to the Plan risks harming the Plan.

**Defendants' Suggested Revision:** Delete. Alternatively, revise conclusion as follows: The Court finds that Defendants' conduct was not so egregious as to warrant the equitable relief Plaintiffs requested.

90.    This relief is necessary to prevent the Plan from continuing to be harmed by paying unreasonable fees for below-market services. It also strikes an appropriate balance between rectifying the harm caused to the Plan while still enabling PSI to service other defined contribution plan clients.

**Defendants' Response:** No relief is necessary.

**Defendants' Suggested Revision**: Delete.

38

**CONCLUSION**

For the reasons stated above, the Court enters judgment in favor of Plaintiffs and awards the following equitable relief:

(1) PSI shall disgorge all payments made by the Plan in violation of 29 U.S.C. § 1106(b), which shall be determined based on the amounts that exceed the damages award from the jury on Plaintiffs' 29 U.S.C. § 1104(a) claims (or **[$ insert]**);

(2) the Board shall issue two Requests for Proposal ("RFP") by a Court-appointed independent fiduciary for all services provided to the Plan by PSI (including Empower), which include recordkeeping and administrative services, and ERISA § 3(16) plan administrator services;

(3) the current fiduciaries (the individual Board members and PSI) are removed from serving as fiduciaries to the Plan, and new Board members shall be appointed by the Court-appointed independent fiduciary; and

(4) PSI shall be barred from providing future services to the Plan for a period of six (6) years. Defendants shall refer to the Court's Conclusions of Law for further directives on the awarded equitable relief.

Within thirty (30) days of this Order, Class Counsel shall provide the Court with their recommendation for an independent fiduciary(ies) identified in Sections V and VI of the Conclusions of Law.

Within that time period, Defendants shall issue a Plan-wide notice to all participating employers and current Plan participants notifying them of the jury's verdict and the equitable relief awarded by the Court. At least seven (7) days prior to its dissemination, a draft of the notice shall be provided to Class Counsel.

**Defendants' Response:** The foregoing must be revised in light of Defendants' above

39

objections to Plaintiffs requests for equitable relief.

**Defendants' Suggested Revision:** In light of the foregoing, the Court finds that no equitable relief is warranted.

Respectfully submitted,                    September 27, 2024

| | |
|---|---|
| */s/ Troy A. Doles*<br>SCHLICHTER BOGARD LLP<br>Troy A. Doles*<br>Kurt C. Struckhoff*<br>Nathan D. Stump*<br>Heather Lea*<br>Jerome J. Schlichter*<br>100 South Fourth Street, Suite 1200<br>St. Louis, Missouri 63102<br>Telephone: (314) 621-6115<br>Facsimile: (314) 621-5934<br>tdoles@uselaws.com<br>kstruckhoff@uselaws.com<br>nstump@uselaws.com<br>hlea@uselaws.com<br>jschlichter@uselaws.com<br>*admitted *pro hac vice*<br><br>*Class Counsel for All Plaintiffs* | */s/ Edward J. Meehan* (w/consent)<br>GROOM LAW GROUP, CHARTERED<br>Mark C. Nielsen, Bar No. MN4214<br>Sarah M. Adams (*pro hac vice*)<br>Edward J. Meehan (*pro hac vice*)<br>David N. Levine (*pro hac vice*)<br>Kevin L. Walsh (*pro hac vice*)<br>Ross P. McSweeney (*pro hac vice*)<br>Kalena R. Kettering (*pro hac vice*)<br>1701 Pennsylvania Ave., N.W.<br>Washington, D.C. 20006<br>202-857-0620 (phone)<br>202-659-4503 (fax)<br>mnielsen@groom.com<br>sadams@groom.com<br>emeehan@groom.com<br>dlevine@groom.com<br>kwalsh@groom.com<br>rmcsweeney@groom.com<br>lkettering@groom.com<br><br>*Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I hereby certify that, on September 27, 2024, a copy of the foregoing was filed and served via ECF on Defendants' counsel of record.

By: /s/ Troy A. Doles

41