**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IMRAN KHAN, et al.,

                    *Plaintiffs*,

v.

BOARD OF DIRECTORS OF PENTEGRA
DEFINED CONTRIBUTION PLAN, et al,

                    *Defendants*.

No. 7:20-cv-07561

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

Table of Contents

Introduction .................................................................................................................... 1

BACKGROUND ............................................................................................................. 1

   I.   Plaintiffs' Claims and Procedural History ......................................................... 1

   II.   Mediation and Settlement History ...................................................................... 3

   III.   Terms of the Proposed Settlement ..................................................................... 4

       A.   Monetary Benefits to Class Members ........................................................ 4

       B.   Costs and Expenses Associated with the Settlement ................................. 4

          1.   Administrative Expenses ..................................................................... 4

          2.   Service Awards .................................................................................... 5

          3.   Attorneys' Fees and Costs ................................................................... 6

LEGAL STANDARD ..................................................................................................... 7

ARGUMENT ................................................................................................................... 8

   I.   The Rule 23 factors are met ............................................................................... 9

       A.   Plaintiffs' counsel and Class Representatives have adequately represented the Class. .................................................................................................... 9

       B.   The Settlement is the product of arm's-length negotiations ...................... 10

       C.   The Settlement affords adequate relief to the class. ................................. 10

       D.   The Settlement provides equitable treatment for Class members. ............ 13

   II.   The remaining *Grinnell* factors are met. ........................................................ 15

CONCLUSION ............................................................................................................... 17

Table of Authorities

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  No. 06-701, 2015 U.S. Dist. LEXIS 93206 (S.D. Ill. July 17, 2015) ........................................ 9

*Bekker v. Neuberger Berman Grp. 401k Plan Inv. Comm.*,
  504 F. Supp. 3d 265 (S.D.N.Y. 2020) .................................................................................... 6

*Chabak v. Somnia Inc.*,
  No. 22-9341 (PMH), 2025 U.S. Dist. LEXIS 80550 (S.D.N.Y. Apr. 28, 2025) ................. 6, 12

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................................... 8, 15

*Claridge v. N. Am. Power & Gas, LLC*,
  No. 15-1261 (PKC), 2017 U.S. Dist. LEXIS 135215 (S.D.N.Y. Aug. 23, 2017) ..................... 7

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons*, Inc.,
  502 F.3d 91 (2d Cir. 2007) ...................................................................................................... 9

*Cunningham v. Cornell Univ.*,
  145 S. Ct. 1020 (Apr. 17, 2025)............................................................................................... 10

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) ............................................................................................... 8, 16

*Dornberger v. Metro. Life Ins. Co.*,
  203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................................................. 15

*Dupler v. Costco Wholesale Corp.*,
  705 F. Supp. 2d 231 (E.D.N.Y. 2010) ..................................................................................... 14

*Fikes Wholesale, Inc. v. Visa U.S.A., Inc.*,
  62 F.4th 704 (2d Cir. 2023) .............................................................................................. 6, 12

*Goldberger v. Integrated Res.*,
  209 F.3d 43 (2d Cir. 2000) ............................................................................................... 8, 12

*Grissom v. Sterling Infosystems, Inc.*,
  No. 20-7948, 2024 U.S. Dist. LEXIS 197927, 2024 WL 4627567 (S.D.N.Y. Oct. 30,
  2024) ................................................................................................................... 12, 13, 14

*Hart v. BHH, LLC*,
  No. 15-4804, 2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020).......................... 14, 15

*Henderson v. Emory Univ.*,
  No. 16-2920-CAP, 2020 U.S. Dist. LEXIS 218676 (N.D. Ga. Nov. 4, 2020) ......................... 5

*Hughes v. Northwestern Univ.*,
  142 S. Ct. 737 (2022)............................................................................................................... 10

*In re Advanced Battery Techs. Secs. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................................. 12

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
  No. 02-5575, 2006 U.S. Dist. LEXIS 17588, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...... 16

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ..................................................................... 7, 10

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ....................................................................................... 8

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ..................................................................................... 6

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................................... 7

*Kohari v. MetLife Grp., Inc.*,
  No. 21-6146 (KHP), 2025 U.S. Dist. LEXIS 7675 (S.D.N.Y. Jan. 15, 2025) ........................... 5

*Krueger v. Ameriprise Fin., Inc*.,
  No. 11-2781, 2015 U.S. Dist. LEXIS 91385 (D. Minn. July 13, 2015) ................................. 10

*Kruger v. Novant Health, Inc*.,
  No. 14-208, 2016 U.S. Dist. LEXIS 193107 (M.D.N.C. Sept. 29, 2016) ............................ 5, 6

*Marin v. 310 Bowery Grp. LLC*,
  2025 U.S. Dist. LEXIS 53631 (S.D.N.Y. Mar. 24, 2025) ........................................... 8, 10

*McBean v. City of New York*,
  233 F.R.D. 377 (S.D.N.Y. 2006) ..................................................................................... 5

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) ....................................................................................... 14

*Myers v. Loomis Armored US, LLC*,
  No. 18-532, 2020 U.S. Dist. LEXIS 62941 (W.D.N.C. Apr. 8, 2020) ...................................... 4

*Nichols v. Noom, Inc.*,
  No. 20-3677 (KHP), 2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 2022) .............. 12, 13

*Nnebe v. Daus*,
  No. 06-4991 (RJS), 2025 U.S. Dist. LEXIS 87399 (S.D.N.Y. May 7, 2025) ................... 11, 13

*Nolte v. Cigna Corp.,*
  No. 07-2046, 2013 U.S. Dist. LEXIS 184622 (C.D. Ill. Oct. 15, 2013).................................... 9

*Pledger v. Reliance Tr. Co*.,
  No. 15-4444, 2021 U.S. Dist. LEXIS 105868 (N.D. Ga. Mar. 8, 2021) ................................. 5

*Roberts v. Texaco, Inc.*,
  979 F. Supp. 185 (S.D.N.Y. 1997) ............................................................................... 14

*Savani v. URS Prof'l Solutions LLC,*
  121 F.Supp.3d 564 (D.S.C. 2015)..................................................................................... 5

*Sims v. BB&T Corp*.,
  No. 15-732, 2019 U.S. Dist. LEXIS 75839 (M.D.N.C. May 6, 2019) ..................................... 10

*Sweda v. Univ. of Pa.*,
    No. 16-4329, 2021 U.S. Dist. LEXIS 239990 (E.D. Pa. Dec. 14, 2021) ................................... 5

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015) ....................................................................................................................... 10

*Tussey v. ABB, Inc.*,
    No. 06-4305, 2012 U.S. Dist. LEXIS 157428 (W.D. Mo. Nov. 2, 2012) ................................ 10

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
    623 F.3d 82 (2d Cir. 2010) ............................................................................................................. 6

*Whelan v. Diligent Corp.*,
    2025 U.S. Dist. LEXIS 64438 (S.D.N.Y. Apr. 4, 2025) ......................................................... 7, 11

*Zimmerman v. Paramount Glob.*,
    No. 23-2409 (VSB), 2025 U.S. Dist. LEXIS 43617 (S.D.N.Y. Mar. 11, 2025) ...... 9, 11, 12, 15

**Statutes**

29 U.S.C. § 1132(g) ....................................................................................................................... 14

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................................... 13

Fed. R. Civ. P. 23(e)(2) ............................................................................................................... 7, 11

Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(C)(iv) ....................................................................................................... 13

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................................. 13

Fed. R. Civ. P. 23(e)(3) ................................................................................................................... 13

Fed. R. Civ. P. 23(h) ......................................................................................................................... 6

**Other Authorities**

Herbert B. Newbert & Alba Conte, 1 *Newberg on Class Actions* (3d ed. 1992) ......................... 10

## INTRODUCTION

Plaintiffs, individually and as representatives of a class of participants and beneficiaries of the Pentegra Defined Contribution Plan for Financial Institutions (the "Plan"), brought this action under 29 U.S.C. §§ 1109, 1132(a)(2), and 1132(a)(3) against Defendants Board of Directors of Pentegra Defined Contribution Plan ("Board"), Pentegra Services, Inc. ("PSI"), John E. Pinto, Sandra L. McGoldrick, Lisa A. Schlehuber, Michael N. Lussier, William E. Hawkins, Jr., Brad Elliott, George W. Hermann, and John Does 1–12 ("Defendants") for breach of fiduciary duty under 29 U.S.C. § 1104(a) and ERISA prohibited transactions under 29 U.S.C. § 1106 related to payments the Plan made to PSI for recordkeeping and administrative services. *See* Dkt. 92. Defendants dispute these allegations and deny liability for any alleged ERISA violations.

After extensive arm's length negotiations, the parties reached a settlement that provides meaningful monetary and equitable relief to Class Members. In light of the litigation risks further prosecution of this action would inevitably entail, Plaintiffs respectfully request that this Court: (1) preliminarily approve the proposed settlement attached to Plaintiffs' Unopposed Motion for Preliminary Approval as Exhibit A ("Settlement"); (2) approve the proposed form and method of notice to Class members; and (3) schedule a hearing at which the Court will consider final approval of the Settlement.[1]

## BACKGROUND

### I.    Plaintiffs' Claims and Procedural History

Plaintiffs Imran Khan and Joan Bullock filed their initial complaint on September 15, 2020. Dkt. 1. They alleged that Defendants breached their fiduciary duties by failing to monitor and

---

[1] If not defined herein, capitalized terms have the definitions in the Settlement, which is incorporated herein by reference.

control the Plan's administrative fees and by retaining in the Plan higher-cost shares of mutual funds and collective investment trusts, including proprietary PSI investments, that charged unreasonable investment management fees. *Id.* (Counts I and III). They further alleged that Defendants committed ERISA prohibited transactions by causing the Plan to use PSI-subadvised investments and PSI's proprietary recordkeeping services. *Id.* (Count II). Plaintiffs also brought a derivative claim against the Board for failing to monitor delegated fiduciaries. *Id.* (Count IV).

On October 13, 2020, a similar but separate ERISA action was filed in this Court, No. 7:20-cv-8503, by Plaintiffs Richard Greenberg, Gregory S. Digsby, Lindsey Clark, and Chrystal Lewis, individually and as representatives of a class of Plan participants and beneficiaries, against the Board, PSI, and John Does 1–20 (the "*Greenberg* action"). On Defendants' motion, the two cases were consolidated, *see* Dkt. 72, and on December 28, 2020, Plaintiffs filed a consolidated amended complaint (Dkt. 74) which added Pamela Joy Wood as a named Plaintiff.

On February 19, 2021, the Court appointed Schlichter Bogard LLC (then known as Schlichter Bogard & Denton, LLP) as interim class counsel. Dkt. 84. On March 5, 2021, Plaintiffs filed an amended consolidated class action complaint ("Complaint"), adding additional facts based on recently-produced contracts between the Plan and PSI. Dkt. 92; *see* Dkt. 85. On June 24, 2021, given the consolidated nature of the proceedings and with the parties' consent, the Court formally dismissed the *Greenberg* action. Dkt. 115. On January 27, 2022, on Plaintiffs' motion, the Court withdrew Richard Greenberg, Gregory S. Digsby, Lindsey Clark, and Chrystal Lewis as named plaintiffs in the consolidated action, without prejudice to a later determination as to whether they would qualify as class members should a class be certified. Dkt. 142.

On March 23, 2022, the Court partially granted Defendants' motion to dismiss (Dkt. 93) by dismissing claims pertaining to the ERISA duty of loyalty. Dkt. 149. In all other respects, however,

the motion was denied. On September 26, 2023, the Court certified a class of "[a]ll participants and beneficiaries of the [Plan] from September 15, 2014 through the date of judgment, excluding Defendants." Dkt. 191.[2] That same day, the Court granted in part and denied in part Defendants' motion to strike Plaintiffs' jury demand, allowing Plaintiffs' claims for money damages to be tried to a jury and ordering the remaining issues to be tried before the Court. Dkt. 190.

On October 10, 2023, Plaintiffs withdrew Count III of the Complaint, concerning the payment of excessive investment management fees. Dkt. 195. In preparation for trial, Plaintiffs voluntarily elected not to pursue their claim in Count IV that the Board failed to monitor delegated fiduciaries. Dkt. 268 at 4. That left two claims to be tried: Count I – breach of fiduciary duty concerning fees for recordkeeping and administrative services (29 U.S.C. § 1104(a)(1)(B) and 1105(a)); and Count II – prohibited transactions (29 U.S.C. § 1106). *See id.* at 3.

Trial commenced on April 15, 2025. On April 23, 2025, the jury returned a verdict in Plaintiffs' favor and against all Defendants on Count I. The jury found losses in the amount of $38,760,232. While the jury was deliberating, the Court held a short bench trial on Count II, receiving into evidence a declaration from Plaintiffs' expert witness, Clay Busker, that set forth certain calculations concerning the fees the Plan paid to PSI. Dkt. 277-1. The parties were ordered to jointly submit updated proposed findings of fact and conclusions of law on Count II and the equitable relief, if any, to be ordered on Counts I and II no later than May 2, 2025.

## II.    Mediation and Settlement History

The parties engaged in settlement discussions throughout the litigation and participated in two formal mediations: one conducted by the Honorable Andrew E. Krause, United States Magistrate

---

[2] By agreement of the parties and in order to accomplish notice to all class members in this Settlement, the settlement Class Period ends on April 30, 2025, rather than "through the date of judgment."

Judge, on October 1, 2024 (*see* Dkt. 255); and a second on January 9, 2025, conducted by Hunter

Hughes III, a nationally-recognized mediator. *See Myers v. Loomis Armored US, LLC*, No. 18-

532, 2020 U.S. Dist. LEXIS 62941, at *3 (W.D.N.C. Apr. 8, 2020) (noting Hughes' reputation).

Although the parties participated in good faith, they were unable to reach an agreement to

resolve the case in either mediation. However, informal settlement talks continued before, during,

and after the trial, and on May 1, 2025, the parties reached an agreement to fully and finally resolve

all claims. The following day, the parties informed the Court of their settlement. *See* Dkt. 294.

### III.  Terms of the Proposed Settlement

#### A.  Monetary Benefits to Class Members

In exchange for the dismissal of this action and for entry of the judgment approving the

Settlement Agreement, Defendants will and have deposited $48,500,000 (the "Gross Settlement

Amount") in an interest-bearing settlement account (the "Qualified Settlement Account") by May

17, 2025. Ex. A § 5.1. The Qualified Settlement Account, plus applicable interest, less the expenses

and fees as described below, will be used to pay Class Members' recoveries.

#### B.  Costs and Expenses Associated with the Settlement

Apart from Class Members' recoveries, the Qualified Settlement Account will be used to pay

administrative expenses to facilitate the Settlement, Plaintiffs' counsel's Attorneys' Fees and

Costs, and Class Representatives' service awards, if approved by the Court.

##### 1.  Administrative Expenses

Administrative expenses include those associated with providing notice to Class Members,

hiring the Independent Fiduciary to approve the terms of the Settlement, and hiring the Settlement

Administrator to administer the Settlement. *Id.* §§ 2.2.1, 2.28, 2.40. After consideration of the

proposed fees and the quality of the services to be provided, Analytics Consulting LLC was

selected as the Settlement Administrator to provide notice to Class Members and administer the

Settlement. Defendants will soon identify the Independent Fiduciary to approve the terms of the

Settlement. It is appropriate for these costs to be paid out of the Qualified Settlement Account.

*E.g.*, *Kohari v. MetLife Grp., Inc.*, No. 21-6146 (KHP), 2025 U.S. Dist. LEXIS 7675, at *38

(S.D.N.Y. Jan. 15, 2025).

## 2. Service Awards

Plaitiffs' counsel will seek $25,000 for each of the three named plaintiffs, Imran Khan, Joan

Bullock, and Pamela Joy Wood, as a service award (or Class Representatives' Compensation as

defined in the Settlement). Ex. A § 2.17. This amount is consistent with district court precedent

recognizing the value of individuals who step forward to represent a class, particularly in contested

complex litigation like this, where the potential benefits to any one person fail to exceed the cost

of prosecuting class-wide claims and there are significant risks of no recovery, costs, and alienation

from employers and peers. *See, e.g.*, *McBean v. City of New York*, 233 F.R.D. 377, 391 (S.D.N.Y.

2006) (noting that service awards of $25,000 to $35,000 "fall solidly in the middle of the range"

generally awarded "across a variety of class actions").

The requested awards are also in line with what other named plaintiffs have received in similar

ERISA fiduciary breach settlements. *See, e.g.*, *Sweda v. Univ. of Pa.*, No. 16-4329, 2021 U.S. Dist.

LEXIS 239990, at *24 (E.D. Pa. Dec. 14, 2021) (granting service awards of $25,000, noting that

"such awards are typical for a class action of this nature") (citing *Pledger v. Reliance Tr. Co.*, No.

15-4444, 2021 U.S. Dist. LEXIS 105868, at *27–28 (N.D. Ga. Mar. 8, 2021) and *Henderson v.

Emory Univ.*, No. 16-2920, 2020 U.S. Dist. LEXIS 218676, at *13–14 (N.D. Ga. Nov. 4, 2020));

*Kruger v. Novant Health, Inc.*, No. 14-208, 2016 U.S. Dist. LEXIS 193107, at *17–18 (M.D.N.C.

Sept. 29, 2016) ($25,000 award); *Savani v. URS Prof'l Solutions LLC,* 121 F.Supp.3d 564, 576

(D.S.C. 2015) (same).

### 3. Attorneys' Fees and Costs

Plaintiffs' counsel will request attorneys' fees to be paid out of the Qualified Settlement Account in an amount not to exceed one-third of the Settlement Fund Balance, as well as reimbursement for reasonable litigation expenses incurred, not to exceed $1,185,000.00. Ex. A § 2.6. A formal application for attorneys' fees and costs and for the Class Representatives' service awards will be submitted at least 30 days prior to the deadline for Class Members to file objections to the Settlement. Plaintiffs' counsel will not seek fees or costs for (1) time associated with administering the Settlement; or (2) work required to enforce the proposed Settlement, if necessary. Ex. A § 2.6.

"It is well-established under the common fund doctrine that 'attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund.'" *Fikes Wholesale, Inc. v. Visa U.S.A., Inc.*, 62 F.4th 704, 723 (2d Cir. 2023) (quoting *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 84 (2d Cir. 2010)). "In numerous prior settlements of 401(k) fee cases, class counsel have been awarded one-third of the monetary recovery to the plans." *Bekker v. Neuberger Berman Grp. 401k Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) (collecting cases); *e.g.*, *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010) (approving a one-third fee); *Kruger*, 2016 U.S. Dist. LEXIS 193107, at *7−8 ("A one-third fee is consistent with the market rate in settlements concerning this particularly complex area of law."); *see also generally Chabak v. Somnia Inc.*, No. 22-9341 (PMH), 2025 U.S. Dist. LEXIS 80550, at *4 (S.D.N.Y. Apr. 28, 2025) (approving class counsel's fee request and collecting cases where a one-third fee was approved as reasonable). Class counsel are also entitled to have their reasonable out-of-pocket litigation costs reimbursed. *See* Fed. R. Civ. P. 23(h); *Chabak*, 2025 U.S. Dist. LEXIS 80550, at *7.

## LEGAL STANDARD

"A class action settlement approval procedure typically occurs in two stages: (1) preliminary approval — where prior to notice to the class, a court makes a preliminary evaluation of fairness, and (2) final approval — where notice of a hearing is given to the class members, and class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019) (cleaned up, citations omitted).

"The threshold is low for preliminary approval of a class action settlement." *Claridge v. N. Am. Power & Gas, LLC*, No. 15-1261 (PKC), 2017 U.S. Dist. LEXIS 135215, at *2 (S.D.N.Y. Aug. 23, 2017). "At the preliminary approval stage, the Court must assess 'whether it is likely that it will be able to finally approve the settlement after notice, an objection period, and a fairness hearing.'" *Whelan v. Diligent Corp.*, 2025 U.S. Dist. LEXIS 64438, at *6 (S.D.N.Y. Apr. 4, 2025) (cleaned up) (quoting 4 Newberg and Rubenstein on Class Actions § 13:10 (6th ed.)).

To approve a proposed settlement, the Court must find that it is "fair, reasonable, and adequate." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019); Fed. R. Civ. P. 23(e)(2). Four factors are considered: "(1) adequacy of representation, (2) existence of arm's length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members." *In re GSE Bonds*, 414 F. Supp. 3d at 692 (quoting Fed. R. Civ. P. 23(e)(2)). Although these factors apply to final approval, "the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court." *In re Payment Card*, 330 F.R.D. at 28.

To determine whether a settlement is substantively fair, reasonable, and adequate, courts in the Second Circuit have also traditionally considered nine factors, known as the *Grinnell* factors. *Id.* at *29. These factors, which overlap significantly with the Rule 23(e) factors, are as follows:

> (1) the complexity, expense and likely duration of the litigation;
>
> (2) the reaction of the class to the settlement;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the risks of establishing liability;
>
> (5) the risks of establishing damages;
>
> (6) the risks of maintaining the class through the trial;
>
> (7) the ability of the defendants to withstand a greater judgment;
>
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
>
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* (quoting *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. 2009)) (citing in turn *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res.*, 209 F.3d 43 (2d Cir. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)). The *Grinnell* factors not covered by Rule 23(e) are factors (2), (3), (7), (8), and (9). *Marin v. 310 Bowery Grp. LLC*, 2025 U.S. Dist. LEXIS 53631, at *13 (S.D.N.Y. Mar. 24, 2025).

## ARGUMENT

The Court should grant preliminary approval of this Settlement.

8

## I.    The Rule 23 factors are met.

### A.  Plaintiffs' counsel and Class Representatives have adequately represented the Class.

This factor typically asks (1) whether the plaintiffs' interests are aligned with the interests of other class members; and (2) whether the plaintiffs' attorneys are "qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons*, Inc., 502 F.3d 91, 99 (2d Cir. 2007); *Zimmerman v. Paramount Glob.*, No. 23-2409 (VSB), 2025 U.S. Dist. LEXIS 43617, at *10 (S.D.N.Y. Mar. 11, 2025). The Court should find this factor readily met here.

The Court has already determined that the named Plaintiffs are adequate Class Representatives "because they have an interest in vigorously pursuing the claims of the class; they seek the same relief as the class members they seek to represent; and they do not have interests that are antagonistic to the class members." Dkt. 191 at 8. They also fully participated in the litigation, were deposed, and attended portions of the trial. Two of them – Khan and Wood – testified in the jury portion of the trial, and their testimony, in Plaintiffs' view, was helpful and well-received.

The absent class members were also well-represented throughout the litigation and at trial by Plaintiffs' counsel, who obtained a $38.7 million unanimous jury verdict on Count I against all Defendants. Plaintiffs' attorneys are highly experienced in handing ERISA class actions involving ERISA-governed plans, having "pioneer[ed]…the field of retirement plan litigation." *Abbott v. Lockheed Martin Corp.,* No. 06-701, 2015 U.S. Dist. LEXIS 93206, at *4–5 (S.D. Ill. July 17, 2015); *Nolte v. Cigna Corp.,* No. 07-2046, 2013 U.S. Dist. LEXIS 184622, at *8 (C.D. Ill. Oct. 15, 2013) (Schlichter Bogard is the "preeminent firm" having "achieved unparalleled results on behalf of its clients"). They have been recognized for their "considerable skill and ability" in ERISA matters. *Sims v. BB&T Corp.*, No. 15-732, 2019 U.S. Dist. LEXIS 75839, at *13 (M.D.N.C.

May 6, 2019) (collecting cases). And they are regarded as experts in their field. *See Tussey v. ABB, Inc.*, No. 06-4305, 2012 U.S. Dist. LEXIS 157428, at *10 (W.D. Mo. Nov. 2, 2012) (Schlichter Bogard are "clearly experts in ERISA litigation"); *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 U.S. Dist. LEXIS 91385, at *6 (D. Minn. July 13, 2015) ("experts in ERISA litigation").

Plaintiffs' firm, Schlichter Bogard LLC, has also obtained the only two successful appeals of an ERISA fiduciary breach case in the U.S. Supreme Court. *Tibble v. Edison Int'l*, 575 U.S. 523 (2015); *Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022). The firm also recently notched another Supreme Court victory in an ERISA prohibited transaction case. *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020 (Apr. 17, 2025).

### B. The Settlement is the product of arm's-length negotiations.

"Courts apply a 'presumption of fairness' to a class settlement 'reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class action' litigation." *Marin*, 2025 U.S. Dist. LEXIS 53631, at *19 (quoting *In re GSE Bonds*, 414 F. Supp. 3d at 692); *see* Herbert B. Newbert & Alba Conte, 1 *Newberg on Class Actions* § 11.41, at 11–88 (3d ed. 1992). As described above, this Settlement is the result of lengthy and complex arm's-length negotiations between the parties. *See* Doles Decl. ¶ 12. Notably, the Settlement was reached after the parties participated in two separate mediations and then engaged in protracted discussions over several months, only to reach a final agreement after the trial concluded. *Id.* ¶¶ 8, 11. These discussions were led by experienced counsel for both parties who have settled numerous similar cases and are extremely experienced in negotiating complex settlements. Accordingly, this factor weighs in favor of preliminary approval. *See Marin*, 2025 U.S. Dist. LEXIS 53631, at *19–20.

### C. The Settlement affords adequate relief to the class.

The terms of the proposed Settlement Agreement include significant equitable Plan-wide remedies and monetary relief totaling $48.5 million, which exceeds the jury's verdict by nearly

$10 million. Settlement at this stage of the litigation also benefits the Class by avoiding the cost, uncertainty, and delay attendant to post-trial proceedings and the appeals process, "ensuring timely relief for class members." *Whelan*, 2025 U.S. Dist. LEXIS 64438, at *10. This will be an outstanding result for all Class members.

This factor also requires the Court to evaluate the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii); *Zimmerman.*, 2025 U.S. Dist. LEXIS 43617 at *13. "[A]n effective method of distributing relief to a settlement class is one that generally facilitates filing legitimate claims and deters or defeats unjustified claims without being unduly demanding." *Nnebe v. Daus*, No. 06-4991 (RJS), 2025 U.S. Dist. LEXIS 87399, at *12 (S.D.N.Y. May 7, 2025) (cleaned up, quotation omitted) (quoting in part Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Here, the distribution plan has been formulated by experienced counsel and is being overseen by Analytics Consulting LLC, an experienced Settlement Administrator. *See* Doles Decl. ¶¶ 13–14. The Settlement Agreement provides a detailed and thorough process for effecting notice to all Class Members and attaches the proposed form of notice and former participant claim form as Exhibits 3 and 4. *See* Ex. A ¶ 3.4. Article 6 of the Agreement sets forth a detailed plan of allocation, which requires the net proceeds of the settlement to be allocated on a proportional basis to current and authorized former Plan participants based on the relative size of their account balances. *See id.* ¶ 6.3.2. The Settlement Administrator will complete all distribution payments within one hundred fifty (150) calendar days of the Settlement Effective Date. *Id.* ¶ 5.7. Authorized former participants, including their beneficiaries or alternate payees, will receive a check. *Id.* ¶ 6.7. Current Plan participants will not be required to submit a claim form to receive a settlement

payment; rather, their payments will be transmitted to the Plan's recordkeeper and applied to their Plan accounts according to their current investments. *See id.* ¶ 6.4.

These and other provisions of the Settlement Agreement provide a fair, rational plan of allocating the net settlement proceeds to Class Members. "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re Advanced Battery Techs. Secs. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (internal marks omitted).

In assessing the adequacy of the relief, courts also consider the proposed attorneys' fees. Fed. R. Civ. P. 23(e)(2)(C)(iii); *e.g.*, *Zimmerman*, 2025 U.S. Dist. LEXIS 43617, at *15. "In calculating a reasonable common fund fee, district courts are to be guided by the following factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Fikes Wholesale*, 62 F.4th at 723 (cleaned up) (quoting *Goldberger*, 209 F.3d at 50). All of these factors support the requested attorneys' fees.

The Settlement seeks reasonable out-of-pocket costs not to exceed $1,185,000.00 and an attorneys' fee award not to exceed one-third of the Settlement Fund Balance. Ex. A ¶¶ 2.6, 2.43. "A fee equal to one-third of a settlement fund is routinely approved in this Circuit." *Nichols v. Noom, Inc.*, No. 20-3677 (KHP), 2022 U.S. Dist. LEXIS 123146, at *32 (S.D.N.Y. July 12, 2022). The proposed fees contemplated in the Settlement Agreement are "consistent with what other courts in this District have approved." *Zimmerman*, 2025 U.S. Dist. LEXIS 43617, at *15 (quoting *Grissom v. Sterling Infosystems, Inc.,* No. 20-7948, 2024 U.S. Dist. LEXIS 197927, 2024 WL 4627567, at *5 (S.D.N.Y. Oct. 30, 2024)); *see also, e.g.*, *Chabak*, 2025 U.S. Dist. LEXIS 80550, at *4 (collecting cases).

The proposed attorneys' fees are also reasonable in light of the significant time and efforts expended by Class counsel over the five-year history of this case. Counsel was able to achieve this outstanding result for the Class only after conducting an extensive pre-filing investigation and lengthy fact and expert discovery; successfully opposing the motion to dismiss and motions *in limine*; engaging in multiple pre-trial conferences; developing jury instructions and other joint pre-trial filings; preparing for and prosecuting a week-long trial; and conducting successful settlement negotiations. All of this was done on a contingency basis, representing substantial risk. "[T]here is inherent risk in litigating cases, especially class actions, and it is appropriate to recognize the risk assumed by Plaintiffs' counsel when determining the appropriate fee award." *Nichols*, 2022 U.S. Dist. LEXIS 123146, at *34.

Rule 23(e)(2)(C) also requires the Court to consider the proposed Settlement Agreement and any other agreements between the parties. Fed. R. Civ. P. 23(e)(2)(C)(iv) and (e)(3); *Grissom*, 2024 U.S. Dist. LEXIS 197927, *14. The parties' Settlement Agreement fully incorporates the terms of their initial written agreement, signed on May 1, 2025, which is attached hereto as Ex. B. *See* Ex. A ¶ 13.13. There are no other agreements between the parties. *See id.*

### D.  The Settlement provides equitable treatment for Class members.

The final Rule 23(e) factor the Court must consider is whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D); *Nnebe*, 2025 U.S. Dist. LEXIS 87399, at *14. In assessing this factor, courts ask whether the settlement proposal "takes appropriate account of differences among class members' claims, and whether the scope of the release affects class members in different ways that bear on the apportionment of relief." *Nnebe*, 2025 U.S. Dist. LEXIS 87399, at *14–15 (cleaned up) (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

13

The Court should find this factor met, as the Settlement Agreement sets forth a plan of allocation whereby distributions to Class Members are calculated based on the relative size of their affected Plan accounts. This is reasonable and equitable, as it mirrors the asset-based method in which the fees paid to PSI were calculated during the Class period. In other words, the monetary relief will be distributed in proportion to the harm. "Pro rata distribution is sufficient evidence of equitable treatment." *Grissom*, 2024 U.S. Dist. LEXIS 197927, at *14. The scope of the release does not raise any equitable concerns, particularly as individual claims unrelated to the specific ERISA violations alleged in this litigation are expressly excluded. *See* Ex. A ¶ 2.38.6.

The Settlement Agreement also contemplates an additional $25,000 payment to each of the three Class Representatives. Ex. A ¶ 2.17. This, too, is equitable. *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 245 (2d Cir. 2023) (noting that service awards are appropriate for class representatives "who play an active role in the litigation"). In determining an incentive award, courts consider "the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation…, any other burdens sustained by that plaintiff… and, of course, the ultimate recovery." *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997), *quoted in Hart v. BHH, LLC*, No. 15-4804, 2020 U.S. Dist. LEXIS 173634, at *13 (S.D.N.Y. Sep. 22, 2020).

Class Counsel notes that the requested service awards are justified here. *Cf. Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 246 (E.D.N.Y. 2010) (approving $25,000 incentive award to plaintiff who did not testify at trial). The Class Representatives took on a substantial risk of non-recovery and alienation from their employers and peers, devoted substantial amounts of their own time to benefit absent Class Members, and exposed themselves to personal liability if Defendants were awarded attorneys' fees and costs, which they requested under 29 U.S.C. § 1132(g). *See* Dkt.

151 at 48. All three Class Representatives attended a portion of the trial and stood willing and able to testify if called. Two of them – Imran Khan and Pamela Joy Wood – were called in Plaintiffs' case and subjected to cross examination by the defense. Both testified that they were serving as named plaintiffs without any expectation of personal financial gain. *See* Trial Tr. 348:9–14; 351:6–12 (Khan); 358:16–359:4 (Wood).

Individual service awards in the Second Circuit "have generally ranged from $2,500 to $85,000." *Hart*, 2020 U.S. Dist. LEXIS 173634, at *13 (citing *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001)). The requested $25,000 awards here fall in the lower half of that range, and their sum total represents only 0.15% of the Gross Settlement Amount. It is also noteworthy that the Gross Settlement Amount substantially *exceeds* the jury's loss finding and could even increase further during the settlement approval process through interest and investment earnings. This is a terrific outcome for the Class. *Cf. Hart*, 2020 U.S. Dist. LEXIS 173634, at *11 (addressing reasonableness and observing that "the Proposed Settlement would not be materially better had Plaintiffs received a jury award").

## II.    The remaining *Grinnell* factors are met.

The *Grinnell* factors not contained within Rule 23(e)(2) include "the reaction of the class to the settlement," "the stage of the proceedings and the amount of discovery completed," "the ability of the defendants to withstand a greater judgment," "the range of reasonableness of the settlement fund in light of the best possible recovery," and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Zimmerman*, 2025 U.S. Dist. LEXIS 43617, at *16-17 (quoting *Grinnell*, 495 F.2d at 463). All five factors here favor preliminary approval.

While the Class has not yet been notified, the named Plaintiffs do not object to the Settlement, "and their approval is probative of the Class's reaction" at this early stage. *Zimmerman*, 2025 U.S.

Dist. LEXIS 43617, at *17 (citation omitted). Having gone through a trial, the named Plaintiffs have "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of [their] claims and the adequacy of the settlement." *See id.* (quoting *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. 02-5575, 2006 U.S. Dist. LEXIS 17588, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006)). Whether or not Defendants could potentially withstand a greater judgment is not before the Court, but "this factor, standing alone, does not suggest that the settlement is unfair." *D'Amato*, 236 F.3d at 86.

Beyond the ordinary risks associated with complex class action litigation, this case presented additional challenges to a successful recovery, including the possibility that the Court's finding of a jury trial right on Count I could be reversed by the Second Circuit Court of Appeals in *Vellali v. Yale University*, No. 23-1082, where that issue is the subject of Yale's cross appeal. Plaintiffs also faced uncertainty in the bench-tried portion of the case (Count II), questions concerning Defendants' individual liability and the enforceability of any greater monetary relief, and the prospect of a potentially successful defense motion for judgment notwithstanding the verdict under Rule 50.

Indeed, Defendants continue to vigorously dispute Plaintiffs' claims and the right to any relief, maintaining that they acted prudently under ERISA and that the fees paid to PSI were reasonable in light of the services provided. Absent the proposed Settlement, Defendants have represented that they would continue to defend their positions by seeking to vacate the jury verdict, opposing any equitable or non-monetary relief, and pursuing appeals, if necessary. Nonetheless, Defendants have agreed to enter into the proposed Settlement, as have Plaintiffs, to avoid the expense, uncertainty, and burden of continued litigation.

Considering that the Gross Settlement Amount exceeds not only the jury's loss finding but also the total damages Plaintiffs requested at trial, *see* PX8 ($42,494,395), and considering the provisions of the Settlement Agreement requiring (a) full deposit of the Gross Settlement Amount into the Qualified Settlement Account by May 17, 2025, (b) the phased removal of certain Board members, and (c) a competitive bidding process for the Plan's recordkeeping and administrative services overseen by an independent fiduciary, the Court should find the proposed Settlement reasonable and likely to be approved.

## CONCLUSION

Plaintiffs respectfully request that the Court grant preliminary approval of the Settlement.


July 2, 2025                                   Respectfully submitted,

                                              /s/ Troy A. Doles
                                              Jerome J. Schlichter (admitted *pro hac vice*)
                                              Troy A. Doles (admitted *pro hac vice*)
                                              Kurt C. Struckhoff (admitted *pro hac vice*)
                                              Nathan D. Stump (admitted *pro hac vice*)
                                              SCHLICHTER BOGARD LLC
                                              100 South Fourth Street, Ste. 1200
                                              St. Louis, MO 63102
                                              (314) 621-6115, Fax: (314) 621-5934

                                              *Lead Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 2, 2025.

                                              /s/ Troy A. Doles

17